HIRAM J. HAMPTON, PLAINTIFF IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW—MANSLAUGHTER THROUGH NEGLI-GENCE OR IGNORANCE OF PHYSICIAN—WAIVING DE-FECTS IN INFORMATION—INTESTINES DEFINED—EX-AMINATION OF WITNESSES—CHARGING ON CREDI-BILITY OF DEFENDANT AS WITNESS—REASONABLE DOUBT.

1. Where the death of a person results from the criminal negli-gence of a medical practitioner in the treatment of the case, the latter is guilty of manslaughter.  This criminal liability is not dependent on whether or not the party un-dertaking the treatment of the case is a duly licensed practitioner, or merely assumes to act as such, acted with good intent in administering the treatment, and did so

with the expectation that the result would prove beneficial. The real question upon which the criminal liability depends in such cases is whether there was criminal negligence. Such criminal negligence is largely a matter of degree, incapable of precise definition, and whether or not it exists to such a degree as to involve criminal liability is to be determined by the jury. Such criminal negligence exists where the physician or surgeon or person assuming to act as such, exhibits gross lack of competency, or gross inattention, or criminal indifference to the patients safety; and this may arise from his gross ignorance of the science of medicine or surgery, and of the effect of the remedies employed, through his gross negligence in the application and selection of remedies, his lack of proper skill in the use of instruments, or through his failure to give proper instructions to the patient or his attendants as to the use of the medicines. But where the person treating the case does nothing that a skillful person might not do, and death results merely from an error of judgment on his part, or an inadvertent mistake, he is not criminally liable.

2. The criminal liability of a physician for the death of his patient brought about by his gross negligence, carelessness or ignorance, may be established upon an indictment or information predicated upon the general statute defining manslaughter, Section 2384, Florida Revised Statutes.

3. Section 2392, Revised Statutes, providing as follows: "If any physician, while in a state of intoxication, shall without a design to effect death administer any poison, drug or medicine, or do any other act to another person which shall produce the death of such other, he shall be deemed guilty of manslaughter," does not furnish the only exclusive case where a physician can be held criminally liable for the unintended death of his patient brought about by his gross negligence or ignorance. Nor does said Section 2392 render the provisions of the general manslaughter statute, Section 2384, Revised Statutes, inapplicable to cases of death unintentionally produced by physicians through gross negligence or ignorance, where there is no question of the sobriety or intoxication of such physician,

but the provisions of said Section 2392 were intended as an addendum to the provisions of the general manslaughter statute in cases of unintentional death at the hands of physicians, to provide for cases that might not be covered by the general statute.

4. Where a defect in form, and not of substance, exists in an information or indictment, and no assault is made thereon because thereof, and the, defendant, without noticing such defect, pleads to the merits and goes to trial, he thereby waives such defect, and cannot avail himself of it for the first time in an appellate court.

5. Questions tending to disclose the animus or bias of a witness are proper on cross-examination and should be allowed.

6. Medical experts may be allowed to express their opinions as to the time when wounds were inflicted upon a subject living at the time of such wounds.

7. Where an information charges a physician with negligently pulling out the "intestines" of a patient whereby her death was produced, it is competent at the trial to prove under such charge that the larger omentum, the mesentery, or any other organ having its place in the abdominal cavity was pulled out or removed. The word "intestines" when used in an information or indictment must be given its broadest popular and most comprehensive sense, as denoting everything on the inside, within, internal, inward as opposed to external, and when applied to the human anatomy includes the bowels, entrails, viscera, enteron, with all of their annexes, and appendages, indeed, everything contained in the abdominal cavity.

8. Because a cross examination shakes the credibility, or demonstrates the inaccuracy and unreliability of the evidence deposed by a witness on his direct examination, this furnishes no reason for striking out such evidence in toto, but if it is otherwise proper evidence, it, with its expose by the cross-examination, remains for consideration by the jury at its worth.

9. A party has no right to cross-examine a witness except as to facts and circumstances connected with matters testi-

fied about on his direct examination. If he desires to en-
quire into other matters he must make the  witness his
own.

10. The trial judge should not in his charge to the jury, or other-
wise so pointedly aim at the  credibility of the  defen-
dant as a witness for himself, as to  impress the  jury
with the idea that the Judge, because of the defendant's
interest in the case, questioned his credibility.

11. The following charge: "If you have a single doubt, you are
not to acquit, but it must become a reasonable doubt, that
is conformable to reason, which would satisfy a reasona-
ble man, under all the facts and circumstances as testi-
fied to in this case," is misleading, confusing and erron-
eous, and should never be given.

This case was decided by Division B.

Writ of Error to the Criminal Court of Record of Hills-
borough County.

The facts in the case are stated in the opinion of the
Court

*Macfarlane & Glen,* for Plaintiff in Error.

*W. H. Ellis,* Attorney-General, for the State.

TAYLOR, J.    Hiram J. Hampton, the plaintiff in error,
together with one Charles S. Stafford, were jointly in-
formed against in the Criminal Court of Record of Hills-
borough county for the crime of manslaughter, alleged to
have been committed on May 2nd, 1904, in said county.
On the joint trial Charles S. Stafford was acquitted, but
Hampton was convicted of the crime charged, and from
the sentence imposed seeks relief here by writ of error.
The information upon which the trial was had is as fol-
lows:

"In the name and by the authority of the State of Florida.

In the Criminal Court of Record for the County of Hillsborough, State of Florida, at the adjourned May Term, in the year of our Lord one thousand nine hundred and four, to-wit:

BE IT REMEMBERED, That Frank M. Simonton, Solicitor for the county of Hillsborough, prosecuting for the State of Florida, being present in said court on the eighth day of July, in the year of our Lord one thousand nine hundred and four, gives the court to be informed and understood that:

On the second day of May, in the year of our Lord one thousand nine hundred and four, at and in the county of Hillsborough aforesaid, one Luvenia Evans was then and there suffering from some disease and sickness, a further and more particular description of said disease and sickness being to the solicitor unknown, and that one Hiram J. Hampton and one Charles S. Stafford, late of the county of Hillsborough aforesaid, as physicians and surgeons then and there took and had the charge and care of the said Luvenia Evans and that the said Hiram J. Hampton, late of the county of Hillsborough aforesaid, in the State aforesaid, did then and there on the second day of May, in the year of our Lord one thousand nine hundred and four, with force and arms at and in the county of Hillsborough aforesaid unlawfully, feloniously, wilfully and by unskillful acts and procurement and culpable negligence and the exercise of gross ignorance and the lack of ordinary knowledge and skill in surgery and with utter disregard for the health, safety and life of the said Luvenia Evans in the performance of a certain surgical operation upon her, the said Luvenia Evans, upon the

second day of May, in the year of our Lord one thousand
nine hundred and four, at and in the county aforesaid and
State aforesaid and in the manner aforesaid did then and
there insert, thrust and strike a certain instrument, a
further description of which is to the solicitor unknown,
which said instrument he, the said Hiram J. Hampton,
had and held in his hands, up and into the womb, abdomen
and body of the said Luvenia Evans and did then and
there in an unskillful, culpable, felonious and negligent
manner aforesaid plunge and force an entrance through
the womb of the said Luvenia Evans into the abdomen of
the said Luvenia Evans then and there in the manner
aforesaid producing  a large rent in and  through the
womb of the said Luvenia Evans and membranes in the
regions of the womb of the said Luvenia Evans and did
then and there in the manner aforesaid pull out the in-
testines of the said Luvenia Evans and did thereby then
and there unlawfully, feloniously, by his acts, procure-
ment and culpable negligence inflict upon the said Luvenia
Evans in and about her womb, abdomen and other in-
ternal parts certain mortal bruises, wounds and lacera-
tions and created in the said Luvenia Evans a mortal sick-
ness and feebleness of body, of which mortal bruises, lac-
erations, sickness and feebleness of  body she the  said
Luvenia Evans on and from the said second day of May
in the year of our Lord one thousand nine hundred and
four  in the county aforesaid and State aforesaid did lan-
guish and languishing did live until the third day of May
in the year of our Lord one thousand nine hundred and
four  on which said third day of May in the year of our
Lord one thousand nine hundred and four  in the county
aforesaid and State aforesaid,  of the  mortal  bruises,
wounds, lacreations, sickness and feebleness of body she,

the said Luvenia Evans, did then and there die, and that the said Charles S. Stafford with force and arms was then and there present unlawfully, feloniously and by his acts, procurement and culpable negligence feloniously aiding, abetting, procuring and counselling him the said Hiram J. Hampton the acts and doings aforesaid of the said Hiram J. Hampton to do and commit, and so the said Hiram J. Hampton and the said Charles S. Stafford did then and there in the manner and form aforesaid unlawfully, feloniously, by and through their acts, procurement and culpable negligence kill and slay the said Luvenia Evans, against the form of the statute in such cases made and provided and to the evil example of all others in like cases offending, and against the peace and dignity of the State of Florida.

Wherefore, the said Frank M. Simonton, County Solicitor as aforesaid, prosecuting for the State of Florida, prays the advice of the court in the premises and that a capias may be issued forthwith for the arrest of the said Hiram J. Hampton and the said Charles S. Stafford and they and each of them be held for trial under the foregoing information.

FRANK M. SIMONTON,

Solicitor for the County of Hillsborough,

Prosecuting for the State of Florida.

State of Florida, }
County of Hillsborough. }

Personally before me came Frank M. Simonton, County Solicitor for Hillsborough county, who, being duly sworn, says that the allegations set forth in the foregoing information are based upon facts that have been duly sworn to as true and which if true would constitute the offense above named.

FRANK M. SIMONTON.

Sworn to and subscribed before
  me this the eighth day of
July, A. D. 1904,
     M. F. McKAY,
          Clerk.

                    Seal of the Criminal
                    Court of Record for
                    Hillsborough County
                    Florida.

Before pleading to the information the defendants moved to quash same upon the following grounds: "1st. That the said information is so vague, indefinite and uncertain in its terms that these defendants are not thereby apprised of the offense with which they are charged.

2nd. That the said information is contradictory and repugnant in its averments.

3rd. That the said information is so insensible in its terms that these defendants are unable to answer to the charges thereby made.

4th. That the said information is bad for duplicity in that it charges, or attempts to charge, several separate and distinct offenses against them in one count.

5th. That the said information in the manner in which the same is drawn charges these defendants with no offense against the laws of the State of Florida." The denial of this motion constitutes the first assignment of error.

Practically the only contention made here in support of this assignment is that the information is fatally defective because it fails to allege that the defendant was *intoxicated* at the time of the performance of the acts which resulted in the death of his patient. In support of this proposition it is contended that section 2392 of the Revised Statutes furnishes *exclusively* the status of facts

under which alone a physician can be convicted of the
crime of manslaughter consequent upon acts that pro-
duced the unintended death of his patient. This section is
as follows: "If any physician, while in a state of intox-
ication, shall without a design to effect death administer
any poison, drug or medicine, or do any other act to an-
other person which shall produce the death of such other,
he shall be deemed guilty of manslaughter." Our general
manslaughter statute under which the information herein
was framed is as follows: "The killing of a human being
by the act, procurement or culpable negligence of another,
in cases where such killing shall not be justifiable or ex-
cusable homicide nor murder, according to the provisions
of this article, shall be deemed manslaughter, and shall
be punished by imprisonment in the State prison not ex-
ceeding twenty years, or imprisonment in the county jail
not exceeding one year, or by fine not exceeding five thou-
sand dollars." The contention of the plaintiff in error
is that this last quoted statute does not apply to cases
where the unintended death of his patient is brought
about through the gross ignorance or gross carelessness
of a physician, whose intention was to cure instead of to
kill, and that in such a case, unless the physician was in-
toxicated, he can not be held criminally liable; that the
provisions of the above quoted section 2392 of the Re-
vised Statutes are exclusive, and furnish the only case
where a physician can be held criminally liable for the
unintended death of a patient; and that under this last
mentioned section a material and necessary averment of
an information or indictment charging a physician with
manslaughter is that he was intoxicated when the acts
were performed that resulted in the death of the patient.

We do not agree with this contention of the able coun-
sel for the defendant. The law seems to be fairly well

settled both in England and America that where the death of a person results from the criminal negligence of the medical practitioner in the treatment of the case, the latter is guilty of manslaughter, and that this criminal liability is not dependent on whether or not the party undertaking the treatment of the case is a duly licensed practitioner, or merely assumes to act as such, acted with good intent in administering the treatment, and did so with the expectation that the result would prove beneficial. And that the real question upon which the criminal liability depends in such cases is whether there was criminal negligence. That criminal negligence is largely a matter of degree, incapable of precise definition, and whether or not it exists to such a degree as to involve criminal liability is to be determined by the jury. That criminal negligence exists where the physician or surgeon or person assuming to act as such, exhibits gross lack of competency, or gross inattention, or criminal indifference to the patients safety, and that this may arise from his gross ignorance of the science of medicine or surgery, and of the effect of the remedies employed, through his gross negligence in the application and selection of remedies, his lack of proper skill in the use of instruments, or through his failure to give proper instructions to the patient as to the use of the medicines; that where the person treating the case does nothing that a skilled person might not do, and death results merely from an error of judgment on his part, or an inadvertent mistake, he is not criminally liable. 22 Am. & Eng. Ency. Law (2nd ed.) pp. 810 and 811 and authorities there cited.

We do not think that in the enactment of the above quoted section 2392 of the Revised Statutes it was the design of the legislature that such provision should supersede and abrogate the above settled principles. Neither

do we think that there is any such inconsistency or repugnancy between the provisions of said section 2392 and the general statute above quoted defining manslaughter as that the two statutes can not consistenly co-exist, or that the general manslaughter statute, that embodies cases falling within the general settled principles of law as above announced, would include all cases of manslaughter that might arise under the provisions of said section 2392 Revised Statutes; but, without undertaking, in the absence of a case in hand, to construe the meaning or intention of said section 2392, we are of the opinion that it will embrace cases of manslaughter that would not fall within the provisions of the general manslaughter statute, and that it was designed more in the nature of an addendum to the general manslaughter provisions rather than to supersede them in cases growing out of malpractice by physicians.

In the briefs of counsel for the plaintiff in error here it is also claimed that the information was bad and should have been quashed because of an informal or defective verification thereof by the prosecuting officer. This assault is made upon the information here for the first time. Without noticing or raising any question as to the sufficiency of the verification of the information the defendant plead to the merits and went to trial. This was a waiver of any defect in the verification of the information, if any existed, and, consequently it can not be considered. Bryan v. State, 41 Fla. 643, 26 South. Rep. 1022.

The second error assigned is that the court erred in denying the motion of defendant to strike the testimony of State's witness J. W. Evans to the effect that his wife (the deceased) would have eaten breakfast on the morning of the fatal operation upon her had she not been pre-

5. S. C.

vented by one of the defendants, or to instruct the jury not to consider it in connection with the defendant Hampton. This witness had already testified on his direct examination that on the morning of the operation on his wife, the deceased, just as he and she were sitting down to eat breakfast, Dr. Stafford came in and told the deceased that she must not eat anything yet, and that she replied that she hated it very bad as she was hungry that morning. To which the doctor replied: "We are going to administer chloroform and it would make you sick." The defendant Hampton was not present at this conversation. On the cross-examination by counsel for the defendant Stafford it was again drawn out by cross-interrogatories from this witness that the deceased would have eaten breakfast if she had been allowed to. At this point the motion was made by the defendant Hampton to strike from the record the statement of the witness to the effect that deceased would have taken breakfast and for an instruction to the jury to disregard the same. The statement of this witness to the effect that the deceased would have eaten breakfast had she not been prevented, was nothing more than an expression of his opinion, and under the circumstances should not have been allowed to go to the jury as evidence against the defendant Hampton, he being absent when the deceased in the presence of the defendant Stafford and the witness expressed a desire to eat breakfast, and the court should at least have cautioned the jury to disregard the same so far as the defendant Hampton was concerned. On cross-examination of this same witness the following question propounded by counsel for defendant, "Have you testified to material facts here today that you did not testify to before the coroner's jury?" was objected to by the State on the ground that if it was intended to impeach the witness his

memory should be refreshed by a statement of the substance of the testimony and of the questions by which it was elicited, which objection was sustained, and this constitutes the third assignment of error. There was no error here. The question as framed sought to make the witness the judge of the materiality of his evidence, and was unfair to the witness in that it did not call to his attention the additional facts that the question intimated that he had testified to on the trial that he failed to testify to at the coroner's inquest. To this same witness the defendants counsel propounded the further cross-interrogatory: "Why did you do that? Was it because you thought my friend Simonton was incompetent?" An objection by the State on the ground that it was immaterial, irrelevant and improper, was sustained by the court, and this ruling constitutes the fourth assignment of error. The witness had just answered before this question was propounded that he had employed and paid private counsel to assist Mr. Simonton the prosecuting attorney in prosecuting the case, and the question sought merely to elicit his reason for so doing. We think the question should have been allowed as it tended to show the prejudice and animus of the witness.

Dr. Saxton, a physician and State witness, while testifying as to the injuries to the womb of the deceased, was asked the question by the State Attorney: "About how recent would you say to this jury that wound had been made in that womb; within what time?" This question was objected to by the defendant upon various grounds, chiefly on the ground that because of previous answers of the witness to questions touching the same subject it was demonstrated that any answer he would make to this question would be mere conjecture, possibility or probability, and would tend to prejudice the minds of the jury

by illegal and incompetent evidence. The objection was overruled and such ruling is assigned as the fifth error. There was no error here. It was a material circumstance for the State to show the time when the deceased met with the wounds. The witness was a medical expert and was competent to give his professional opinion, from the appearance of the wounds, as to how long they had existed. Commonwealth v. Piper, 120 Mass., 185, text 189.; Linsday v. People, 63 N. Y. 143. To this same witness the further question was propounded: "If that larger omentum had been torn out through the womb and had had blood on it, what would have been its color?" This question was objected to on the ground that it was grossly leading and suggestive of the answer intended to be given; and upon the further ground that if it is an hypothetical question it is not based upon any evidence that has heretofore been given in the case. These objections were overruled and such ruling is assigned as the sixth error. There was no error in this ruling. The fact sought to be elicited was pertinent and relevant to the issues, and tended to corroborate other testimony in the case tending to show that the defendant forced out the omentum of the deceased through the rent in her womb and through the vagina. It was not subject to the criticism of being leading, or suggestive of the answer sought. To this witness was propounded the further question: "What are the functions of this larger omentum?" Upon the propounding of this question the defendant interposed objections jointly with a motion to strike all of the witness' evidence along the same line on the grounds that it was irrelevant and immaterial, and because the State is bound by the specific allegations of the information and this evidence would be a variance from those allegations, and tends to prejudice the jury against the defendant by illegal evidence. These objec-

tions and motion to strike were overruled, and such ruling constitutes the seventh assignment of error. It is contended here in support of this assignment that inasmuch as the information charges the defendant only with pulling out the intestines of the deceased, it can not be shown that the great omentum was so torn out since the latter is no part of the intestines.

We do not agree with this contention. While all of the numerous internal organs of the human anatomy, having their place within the abdominal cavity, have each of them a technical name by which they are known to the professional man, yet to the layman they are all of them included within the one general comprehensive term of "intestines." Webster in the last edition of his International Dictionary defines the word "intestine" as meaning: "On the inside, within;" "Internal; inward—opposed to external." "Depending upon the internal constitution of a body or entity." "The bowels, entrails, viscera." Thus making it synonymous with the word "viscera," which is defined as being applied to the organs contained in the abdomen.

According to the Century Dictionary the term "intestines" is used in biology in a wider sense to include the whole enteron, and the term "enteron" is there defined as meaning, in anatomy, "the intestines, alimentary canal, including its annexes and appendages." The information used the word "intestines" in this its broadest, nontechnical sense, and under it proof showing that the omentum, mesentery and other appendages and annexes of the bowels were pulled out was pertinent and permissible.

A State witness, Mrs. Gafford, who testified that she was present when the defendant operated on the deceased

and saw him with a surgical instrument on that occasion which she described, was shown a package of surgical instruments, and was then requested to examine such package and to see and say whether or not there was an instrument there such as she saw the defendant take under the cover with him at the time of the operation. This question was objected to, it is not clear upon what ground, by the defendant, which objection was overruled and such ruling constitutes the eighth assignment of error. There was no error here. The testimony tended to identify the instrument supposed to have been used by the defendant and was proper. Upon this witness identifying an instrument as being like the one she saw the defendant have, the defendants counsel moved the court to permit him to cross-examine the witness as to her description of the instrument, which motion was denied and this ruling is assigned as the ninth error. The motion was made in the midst of the direct examination by the prosecuting attorney of the State witness, and there was no error in refusing at that state of the examination to permit cross-examination of the witness on that isolated phase of her evidence. The defendant was permitted afterwards to cross-examine the witness fully upon this point as well as upon all the facts disclosed by her direct evidence, and there was no error in refusing to have the direct examination of the witness thus interrupted. Towards the close of the defendants cross-examination of this witness, upon her answering that the instrument she had formerly identified on her direct examination and designated as exhibit A, was not exactly like the one the defendant had at the time of the operation, the defendants counsel moved the court to strike out all the evidence relating to such instrument designated as exhibit

A, and the jury instructed not to consider it, because the witness had testified that it was not like the one present at the operation, that it was longer, that it was not so thick, that its points were not corrugated as was said exhibit A, but were smooth, that its points were sharp and not dull like the exhibited one, and because the instrument had not been sufficiently identified as similar to the one the witness saw in order to permit the jury to consider the resemblance to the one the witness saw at the operation, and because it is illegal evidence that tends to prejudice the jury against the defendant. This motion was denied and such ruling constitutes the tenth assignment of error. There was no error here. Because a cross-examination shakes the credibility, or demonstrates the inaccuracy and unreliability of the evidence deposed by a witness on his direct examination, furnishes no reason for striking out such evidence in toto, but if it is otherwise proper evidence, it, with its expose by the cross-examination, remains for consideration by the jury at its worth.

State witness J. W. Evans was recalled by the State and the following question was propounded to him: "You have testified here and have described the instrument that you saw Dr. Hampton handling and lying on the bed, and which you say fell from the bed into a vessel that was there, will you just look at what instruments we have here, and if you see any here that resembles or is similar to the instrument which he had, point it out?" The defendant objected to the question because there is no evidence before the jury identifying either of these instruments as having ever been in the possession of these defendants or either of them. This objection was overruled, and such ruling is assigned as the eleventh error. There

was no error here. The theory of the prosecution was that the wounds in the womb of the deceased were made with an instrument known as a Uterine Dilator, and there was evidence tending to establish such theory. It made no difference whether the identical instruments exhibited to the witness had ever been in the possession of the defendant, if the one he used was similar to any exhibited to the witness, it was proper for him to say so, as it tended to prove what manner of instrument was used in creating the wounds charged, and was material to the issues in the case.

At the close of the cross-examination of this witness the defendants counsel moved the court to strike out all of his evidence relative to an instrument identified by him and designated as exhibit D as being similar in appearance to the instrument present in the hands of the defendant at the time of the operation on deceased, on the grounds that said exhibit D had not been sufficiently identified as being similar to the one in the possession of the defendant at the operation, and because it had not been identified in any particular as an instrument had by him at that time.

We think that the witness had sufficiently identified the instrument as being similar in appearance to the one in the possession of the defendant at the operation to make his evidence relative thereto admissible, and there was consequently no error in the ruling complained of.

Dr. Adamson, a State witness, was permitted to identify by name to the jury the various instruments introduced in evidence, and to explain their uses and the manner of using them, and was proceeding to explain to the jury why he was of the opinion that the wounds in the womb of the deceased were made with the instrument

called a uterine dilator, and how such wounds were made therewith, when he was stopped by an objection from the defendant's counsel, which objection was sustained by the court, and the following question had been propounded to the witness: "How many inches of the intestines did you see?" when counsel for the defense moved to strike from the record all of the evidence of the witness in relation to the instruments designated as A, B, C, D and E, and that the jury be instructed not to consider same, upon the grounds that none of said instruments had been identified as ever at any time having been in the possession of either of the defendants; and because all of such evidence is irrelevant and immaterial; and because it tends to prejudice and becloud the minds of the jury; and because the only proper evidence relative to such instruments would be concerning the identical instrument actually used by the defendants, if any, in performing the operation on deceased. For the reasons already herein above stated there was no merit in this motion and no error in its denial.

To Dr. Adamson, a State expert witness, the following question was propounded: "Upon an examination of a patient if you should find several feet of her smaller intestines protruding through the vagina, and should find rents in that woman's womb, one of which was large enough for the end of the finger of a man could come through also find that those intestines came through one of those rents in that womb, what in your opinion as a physician, caused that state of facts?" This question was objected to on various grounds not necessary to be mentioned. The objection was overruled and such ruling is assigned as the fourteenth error. There was no error here. The facts hypothesized in the question had been testified

to, and from those facts it was within the province of a professional medical expert to express an opinion as to how such a status of affairs was accomplished.

Dr. Helms, a State witness, who was present at the post mortem examination of the body of deceased, after describing the condition in which the internal parts of the deceased were found to be, and the wounds found in her womb which made an opening between the abdominal cavity and the interior of the womb, was asked the question: "What in your opinion as a physician was used to make those two rents in the womb which you have described?" The witness answered: "I think some manner or kind of instrument was used to produce those rents." Then the question was asked: "What kind of an instrument in your opinion?" This question was objected to by the defendant upon the grounds that it seeks expert or opinion evidence upon a subject where such evidence is not permissible; and because there is no evidence identifying any instrument as having been in the possession of the defendants or as having been used by either of them on the person of deceased; and because there is no evidence that either of the defendants ever used any instrument on the deceased; and because the question seeks to elicit mere conjecture, probabilities and possibilities.

These objections were overruled and such ruling is assigned as the fifteenth error. There was no error here. The facts assumed in the objections and upon which they are predicated are not borne out by the record, and the fact sought to be elicited by the question was one that the witness showed himself to be competent to testify to as a medical expert, and concerning which expert or opinion evidence was permissible.

The same witness, after testifying that several feet of the bowels of the deceased were found to be denuded of

their mesentery, was asked the question: "What in your opinion caused those intestines to become detached from their mesentery?" To this question the same objections were interposed by the defendants as last above stated. Such objections were overruled and such ruling is assigned as the sixteenth error. For the same reasons last above announced there was no error here.

Dr. Lawrence, a State witness, who was present at the autopsy over the deceased, and who had described the wounds and injuries to her internal organs, was asked the question: "In your opinion as a physician what instrument was used to make those injuries in the ureter and in the ovary that you have testified to?" This question was objected to upon the various grounds already passed upon above, the objections were overruled and such ruling is assigned as the seventeenth error. For the reasons already stated there was no error in such ruling.

The State Attorney offered in evidence three instruments known as Uterine Dilators, and one instrument identified as a vaginal speculum, relative to which the witnesses had given testimony, that were designated as exhibits A, B, C and D. To their introduction in evidence the defendants objected upon various grounds already recapitulated herein. The objections were overruled, and such ruling is assigned as the eighteenth error. There was no error in such ruling. The wounds to the deceased were described in detail by the various medical experts, and were exhibited to the jury in the detached womb of the deceased, and such witnesses had described the uses and manner of using such instruments, and had expressed their expert opinions that the wounds were produced by such instruments. It was proper to exhibit to the jury, for their more full understanding of the facts deposed, the instruments themselves so testified about.

Dr. Richardson, a medical expert witness for the defense, was asked on cross-examination by the State the following question: "You told counsel for the defendants that a man of ordinary skill, a physician of ordinary skill and ability and of average practice would not be blameable if he mistook a knuckle of the bowel protruding into the cervix of the womb, or into the vagina for a bag of waters of an unborn child; would that physician have been blameable if he had drawn out four or five feet of the bowel?" This question was objected to by the defendants because it is immaterial and irrelevant and because the question of blame is a matter of law and is not a matter of fact, and is not to be decided by the witness in question. This objection was overruled and such ruling is assigned as the nineteenth error. There was no error here. The purpose of the defense in its direct examination of this its witness was to show that a physician of ordinary skill should not be held blameable for mistaking a knuckle of bowel protruding through into the vagina for a bag of waters of an unborn fetus; the purpose of this cross-question was to break the force of this by showing that even if an ordinary skilled physician could without blame mistake the protruding bowel for the bag of waters, yet he could not blamelessly go further and pull out four or five feet of the bowels mistaking such bowels still for a bag of waters, which was a legitimate cross.

Dr. Richardson, the defendants medical expert witness, was asked on the cross-examination the following questions, after having examined the preserved womb of the deceased exhibited in court: "after you have examined those wounds in that womb, what in your opinion made those wounds?" and "describe a Uterine Sound to the jury." Both of these questions were objected to upon the

ground, among others, that they were not in pursuit of anything brought out on the direct examination of the witness. The objections to both questions were overruled and such rulings constitute the twentieth and twenty-first assignments of error. These rulings were erroneous. It is settled here that a party has no right to cross-examine a witness except as to facts and circumstances connected with matters stated in his direct examination, and if he wishes to examine him as to other matters he must make the witness his own. Savage and James v. State, 18 Fla. 909; Adams v. State, 28 Fla. 511, 10 South. Rep. 106; Tischler v. Apple, 30 Fla. 132, 11 South. Rep. 273; Williams alias Lattimore v. State, 32 Fla. 315, 13 South. Rep. 834; Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938. The two questions objected to related to matters about which the witness had not testified on his examination in chief, and should not have been allowed.

What is here said as to the twentieth and twenty-first assignments of error applies as well to the question asked on the cross-examination of the defendant Dr. Stafford introduced as a witness on behalf of the defendants, wherein he was asked on cross-examination the following question: "If those rents had been in that woman's womb, and her bowels had been denuded of their mesentery as you ascertained they were on the second operation, could she have been up and attending to her domestic affairs?" the overruling of objections to which question is assigned as the twenty-second error.

The following charge given by the court to the jury and excepted to is assigned as the twenty-third error: "You have heard the evidence in this case, and under the law you are the sole judges of the evidence, the weight of the evidence, and the credibility of the witnesses who have testified in this cause. As jurors it is your duty to care-

fully weigh and carefully consider all of the evidence in the case, to apply the law as given you by the court to that evidence, and to return a verdict in accordance with the law and the evidence. When evidence is conflicting it is your duty to reconcile the same if possible, but you have the right to discard any evidence which you disbelieve. A defendant has the right to testify in his own behalf, but when he does so testify, his testimony is to be considered the same as any other witness, bearing in mind whatever interest he has in the case, as to whether his testimony is true. It is your duty to consider the interest of any witness in the case, as to whether his testimony is true." The last two paragraphs of this charge should not have been given. It might be well enough for a trial court to instruct a jury in general terms that in weighing all of the testimony in the case they might take into consideration the interest that any witness had or exhibited in the result, but it was erroneous to single out the defendant from among all the other witnesses in the case, and, pointedly, in connection with his character as a witness, say to the jury that they must bear in mind whatever interest he has in the case, as to whether his testimony is true. The natural result of such a charge would be to create the impression on the minds of the jury that the judge himself did not lend any credence to the evidence given by the defendant as a witness because of his great interest in the case, and that he desired to impress upon the jury that they should not give any credence to it for the same reason. Easterlin v. State, 43 Fla. 565, 31 South. Rep. 350; Lang v. State, 42 Fla. 595, 28 South. Rep. 856; Lester v. State, 37 Fla. 382, 20 South. Rep. 232; Hubbard v. State, 37 Fla. 156, 20 South. Rep. 235.

The court gave the following charge to the jury which

was excepted to and is assigned as the twenty-fourth error: "The court charges you that a reasonable doubt is that state of the case which after the comparison and consideration of all the evidence in the case leaves the minds of the jurors in that condition, that they can not say that they feel an abiding conviction, to a moral certainty, of the truth of the charge. (If you have a simple doubt, you are not to acquit, but it must become a reasonable doubt, that is conformable to reason, which would satisfy a reasonable man, under all the facts and circumstances as testified to in this case.)" The last clause of this charge that we have enclosed in parenthesis is erroneous for several reasons. A "simple" doubt, as contradistinguished from an intricate or complicated doubt, may be such a reasonable doubt as would require an acquittal—indeed every reasonable doubt may be accurately said to be a simple doubt; and it is error to instruct a jury that it must not acquit if it has a simple doubt. The charge is erroneous also because it requires the reasonable doubt that justifies acquittal to be such a doubt "as would satisfy a reasonable man under all the facts and circumstances as testified to in the case." *Satisfy* the reasonable man of what? Of the fact that his mind was in a state of doubt, or satisfy him of the guilt or innocence of the accused? The charge does not at all tend to elucidate the meaning of the phrase "reasonable doubt," but on the contrary confuses and beclouds the subject, and leaves the minds of the jury mystified and in a more *unsatisfied* state than they would be in if laboring under a half dozen reasonable doubts. Hall v. State, 31 Fla. 176, text 190, 12 South. Rep. 449; Wood v. State, 31 Fla. 221, 12 South. Rep. 539.

The court gave in charge to the jury the general statutory definition of manslaughter, and, elucidative of it,

gave the statute definition of murder in its several degrees and of justifiable, and excusable homicide. These charges were excepted to and are assigned as the twenty-fifth error. The contention here in support of this assignment is the same as that urged in support of the first assignment of error, viz: the denial of the defendants motion to quash the indictment. For the reasons already given in disposing of the first assignment of error, there was no error in giving these instructions.

The twenty-sixth, twenty-seventh and twenty-eighth assignments of error complain of the refusals of the judge to give the three following instructions requested by the defendant. "The rule of law governing such cases as this is that if a physician *bona fide* and honestly exercising his best skill to cure a patient performs an operation which causes the patient's death, he is not guilty of manslaughter, and if you believe from the evidence in this case that the defendant in doing what he did, did it in good faith, and honestly exercised his best skill to cure the deceased, you must find him not guilty."

"It is your duty to acquit the defendant, and you should render a verdict of not guilty, unless you as jurors, after carefully considering all the evidence, can feel fully satisfied in your minds to a moral certainty, beyond all reasonable doubt, that in the operation performed on the deceased was not *bona fide* and honestly exercising his best skill to cure the deceased."

"If you believe from the evidence in this case that the defendant in doing as he did acted in good faith, with an honest intention to do what he considered best for his patient and without any evil intention toward her you must acquit the defendant."

There was no error in the refusal to give either of these requested instructions. All of them are faulty as applied

to the facts of this case, because of their failure to meet the idea that though a party holding himself out to the public as being a physician may use his best skill and judgment in an honest effort to cure instead of to kill his patient, yet that he may be so grossly ignorant of the science of medicine and surgery as to render himself criminally responsible for the results of such ignorance. Said charges are also faulty in ignoring the rule that a physician in the treatment of his patient must not only use his best skill and judgment, but must exercise due care in such treatment.

The twenty-ninth assignment of error is the refusal of the judge to give the nineteenth charge requested by the defendant. There was no error in such refusal, for the reason that the material substance of such charge had already been given under different forms of expression in other charges requested by the defendant and given by the court.

The thirtieth and last assignment of error is the denial of the defendants motion for new trial. All of the grounds of this motion have already been considered in the discussion of the preceding assignments of error, except the loss from the records below of two charges given by the court below at the request of the State, which loss was without any laches of defendant, and by which he claims here that he is deprived of the right of a review thereof by this court. As the case is to be reversed upon other grounds, such loss may not occur on another trial and it becomes unnecessary to consider its effect here. The only other ground of the motion for new trial not disposed of is that the verdict was not supported by the evidence. As the judgment below must be reversed for other errors found, and as there may be another trial of the case it

6 S. C.

would be improper for us to express any opinion at this time upon the sufficiency of the evidence for conviction.

For the errors found the judgment of the court below is hereby reversed and a new trial awarded at the cost of the county of Hillsborough.

HOCKER and PARKHILL, JJ., concur.

SHACKLEFORD, C. J. and COCKRELL and WHITFIELD, JJ., concur in the opinion.