J. D. FRINK, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1. In a criminal case it is erroneous to charge the jury that "where the testimony is conflicting it is your duty to reconcile the same if possible, but any testimony which you may fail to *reconcile*, or fail to believe you have the right to reject." The jury have no right to reject testimony because they are unable to reconcile it with other testimony, irrespective of whether that other testimony carries conviction to their minds beyond a reasonable doubt.

2. In a trial of a railroad agent for embezzlement it is erroneous to charge the jury that "embezzlement is the wrongful conversion of the property of another, to one's own use which lawfully came into his possession or care as servant, bailee or *otherwise.*" The words *or otherwise* are not contained in the statute defining the offense for which the defendant in the instant case was prosecuted.

3. In a trial of a railroad agent for embezzlement the following language in a charge is erroneous: "but where it is the servant's duty to account for and pay over the moneys received by him, at stated times, his not doing so willfully is embezzlement." There is no rule of law which fixes the crime of embezzlement upon an agent simply for want of punctuality in paying over money received by him, and unless such an agent fraudulently appropriates such money, his tardiness simply in paying it over is not embezzlement.

4. In the criminal prosecution of a defendant for embezzlement as agent of the Plant City, Arcadia and Gulf Railway and of its money and there was evidence tending to show that the Seaboard Air Line Railway was during the time of such alleged embezzlement, operating the Plant City, Arcadia and Gulf Railway and was entitled to the money it earned and its profits, it was erroneous for the trial court, to refuse to give an instruction requested by the defendant to the effect that if the jury had a reasonable doubt in their minds as to whether or not the money alleged to have been embezzled was the money of the Seaboard Air Line Railway it would be their duty to acquit the defendant.

5. In a trial for embezzlement the defendant has a right to introduce evidence of facts which would have a tendency to show he had no criminal intent to fraudulently convert the money of his principal to his own use.

This case was decided by Division B.

Writ of Error to the Criminal Court of Record for Hillsborough County.

The facts in the case are stated in the opinion of the court.

*Wall & McKay,* for plaintiff in error;

No appearance for the State.

HOCKER, J.—On the 4th day of December, 1907, the County Solicitor of Hillsboro County filed an information against J. D. Frink, the plaintiff in error, containing three counts. The first count charges the plaintiff with the embezzlement in Hillsborough county of $700 on the first of August, 1906, of the money of the Plant City, Arcadia & Gulf Railway, a corporation, which he received by reason of his employment as agent and servant of said corporation, alleging that he did then and there unlawfully and feloniously convert the said money to his own use. The second and third counts are like the first, except that the date of the embezzlement is fixed on the first of January, A.D. 1907, in the second count, and the first day of May, 1907, is the date alleged in the third count. On the trial, concluded on the 7th of December, 1907, the jury brought in a verdict of guilty of "grand embezzlement," and the plaintiff was sentenced to the State Prison for five years. This judgment is here for review on writ of error.

It was shown by the testimony of Hon. P. O. Knight, a State's witness, that the Plant City, Arcadia & Gulf Railway is a corporation organized under the laws of this State; that the railway commences at Plant City and is completed to Welcome, all in Hillsborough county, except a spur extending to Memminger's Phosphate Plant in Polk county. The line is about eighteen miles in length. The principal office is in Plant City. The railroad changed ownership about the latter part of July,

1906, and the new purchasers retained the plaintiff as agent of the company. He was the agent of the company under its previous ownership.

Mr. Knight explains that what he meant by "changing ownership" is that the stock of the company was purchased, and that as a matter of fact all the stock except four shares is in his name. Mr. Knight disclaims being a trustee and says: "I really appear to be the owner of it when in fact I am not. I do not know whom the real owners are—I imagine." He further says he is the President, Secretary, Treasurer and Attorney of the road. No money is remitted to him but all money is supposed to be remitted to Comptroller's and Treasurer's office of the Seaboard Air Line at Portsmouth, Virginia, and that the Seaboard operates the road. The purchase money of the stock was furnished to Mr. Knight by men connected with the Seaboard Air Line Railroad. When the road was purchased Mr. McKenzie as representative of the Comptroller's office at Portsmouth, and as representative of the Seaboard Air Line came here and took charge of the road, and put Mr. Frink the plaintiff, in charge of it. Mr. Knight further says that all the monies and assets and *profits* from the operation of this road were turned over to the Seaboard, as appointees of the Plant City, Arcadia & Gulf R. R. The Treasurer of the Seaboard draws out the money of the Plant City, Arcadia & Gulf R. R., which is all remitted to the Exchange National Bank of "this city." (Tampa.) The accounts are kept separate. So far as we can understand from the testimony in this case it does not appear that the Plant City, Arcadia & Gulf Railway was the owner of or entitled to one dollar arising from the operation of the said railway.

Mr. McKenzie, Assistant to the Comptroller of the Seaboard Air Line Railway, came down from Ports-

mouth, and checked up Mr. Frink at the time the owner-ship of the P. C., A. & G. changed. He then found Frink's accounts all right. He started him off as agent under the new management and instructed him as to making his freight and ticket receipts and furnished him with the necessary blanks and instructed him to make daily remittances when they amounted to five dollars or over, to the Exchange National Bank of Tampa. He says Frink's duties were to make his reports, to collect for freight charges and ticket sales, and to make freight reports four times a month, and ticket-sale reports once a month, and a monthly balance sheet.

It appears from the evidence that there were ten stations along this road (P. C., A. & G.) where freight and passengers were received and discharged. Way bills were made out for freight to these different places. Frink really was a sort of manager of this road and responsible for all monies received or due, and all monies paid out for work. The road did a very considerable business, especially in handling phosphate. It earned quite a large amount of money. Frink had one man to assist him in Plant City who received from fifty to sixty dollars a month, and one other man at another station who received fifteen dollars per month, and another man at another station who received five dollars per month. But Frink was held responsible for all freight at all points on the road. He was paid $100.00 per month. In busy times he sometimes acted as conductor and engineer. He sometimes worked twenty-four hours without sleep. He usually worked from six o'clock in the morning until nine or eleven at night. It does not appear that Mr. Frink was furnished with a cash book, or indeed any other sort of books, or that he had a book-keeper. Mr. Frink was permitted to operate this road as best he could under the circumstances until the

20th of July, 1907. His accounts were not checked up for about a year. Then the traveling auditor of the Seaboard Air Line Railway came along and checked him up. He found Frink's accounts in a state of confusion and found him short about $3,200.00. On a re-checking this amount was considerably reduced. Mr. Frink then hired an accountant and made out his shortage about $1100.00.

From reading all the evidence we are not impressed with the fact that any part of the alleged shortage actually came into Frink's possession, or that it might not have been the result of a very poor system of accounting, which may have been the result of inadequate assistance in the discharge of burdensome and conflicting duties. For we do not quite understand how one man could collect all the freight due at some ten stations, sell and collect for all tickets, keep the road-bed in repair and pay all costs, run as conductor and engineer when necessary, make settlement with connecting roads, make daily reports, weekly reports, monthly reports, and at the same time keep a nice set of books ready for the inspection of the travelling auditor when he came along, with only a $50 per month man to help in Plant City, and one $15 and one $5 per month man out on the line. Besides it is shown that Frink was sick in bed one whole week. Frink has not sought, so far as we can see from the evidence, to avoid responsibility or liability for anything which he admits to be due.

The foregoing facts seem to be reasonably established by the evidence. There is much other testimony bearing on his accounts, and the conditions under which he operated this road, but we can not discover that any part of it is in conflict with or alters the effect of what has been stated.

A large number of errors are assigned and argued,

and a good many seem to be well taken; but we do not feel called upon to lengthen out this opinion into an examination of them all.

The court charged the jury as follows: "Under the law you gentlemen are the sole judges of the evidence and credibility of the witnesses. You have the right to reject any and all testimony which you disbelieve. Where the testimony is conflicting, it is your duty to reconcile the same if possible, but any testimony which you may fail to *reconcile* or fail to believe you have the right to reject." This charge is clearly erroneous. The jury has no right to reject testimony because they are unable to reconcile it with other testimony, irrespective of whether that other testimony carries conviction to their minds. The testimony of the State may connect a defendant with the crime charged. The defendant's testimony may show he had no connection with it. The testimony is, therefore, irreconcilable, for a defendant cannot be at the same time guilty and not guilty. Under such circumstances a defendant might be entitled to an acquittal under the rule of reasonable doubt.

The court charged the jury that "Embezzlement is the wrongful conversion of the property of another to one's own use which lawfully came into his possession or care as servant, bailee, *or otherwise.*" The words *or otherwise* are not contained in the statute defining the offense for which the defendant is prosecuted, or in the information. They were calculated to mislead the jury. See section 3311 General Statutes of 1906.

The court charged the jury that "if a person who is charged with embezzlement, instead of denying the appropriation of the money alleges a right in himself, however unfounded, or sets up an excuse, however frivolous, he cannot be convicted of embezzlement, which implies secrecy and concealment, *but where it is the*

*servant's dut·) to account for and pay over the moneys received by him at stated times, his not* doing so willfully is embezzlement." The latter portion of this charge is objected to and is italicised. It seems to us it is erroneous. We know of no rule of law which fixes the crime of embezzlement upon an agent who does not punctually at the date fixed by his duty pay over money he has received, even when he does so willfully, and unless he fraudulently appropriate such money to his own use his tardiness in paying it over is not embezzlement. He might have any one of several excuses which would at least go to show a lack of criminal intent. Such an act on the agent's part might tend to show that the crime was committed as a matter of fact and evidence, but this does not amount to a rule of law and fix guilt upon the agent beyond the power of explanation and reasonable excuse.

The court refused to give the following instruction requested by the defendant: "And the court further charges you that if you believe from the evidence that the money which this defendant is charged with misappropriating was the money of the Seaboard Air Line Railway, a corporation, and not the money of the Plant City, Arcadia & Gulf Railway, a corporation, or if you have a reasonable doubt in your minds as to whether or not the money was the money of the Seaboard Air Line Railway, a corporation, then it will be your duty to find the defendant not guilty." This instruction should have been given. There was evidence tending to show that the Seaboard Air Line Railway was operating the P. C., A. & G. Railway during the time of this alleged embezzlement, and was entitled to the money it earned and its profits (See the testimony of Hon. P. O. Knight and others), and the indictment charged its ownership to be in the P. C., A. & G. Ry. Co.

The record also shows that the defendant propounded several questions to his witnesses, tending to elicit facts which would have had a bearing on the question of his intent, his purpose being to show that he had no criminal intent. These questions were objected to by the State, and the objection was sustained. In these matters we think the court erred, as well as in the refusal of the court to allow the defendant to propound to his witnesses several questions tending to elicit testimony bearing upon his intent in dealing with the funds which came into his possession as agent. He had a right to show, if he could, that he had no intent to fraudulently convert the money of his principal to his own use. Some latitude is to be allowed not only in proving this offense, but on the other hand to show the bona fides of the accused. 15 Cyc. 529.

The verdict is objected to because it finds the defendant guilty of "grand embezzlement." Taken in connection with the charge we think the verdict is a good one. The court charged the jury that if they found the defendant guilty of embezzlement over $20 they should find him guilty of grand embezzlement. Though the statute does not use the language, it is evident from the charge what the jury meant.

The judgment is reversed and the case remanded for a new trial.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.