LYLL McLEOD v. STATE.

174 So. 466.
Division A.
Opinion Filed May 19, 1937.

*Martin & Martin,* for Plaintiff in Error.

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

BUFORD, J.—The writ of error brings for review judgment of conviction of murder in the second degree on an information charging murder in the second degree and filed in the Criminal Court of Record pursuant to the certification of an indictment charging the defendant with the offense of murder in the first degree but upon which the defendant had been tried in the Circuit Court of Polk County, Florida, convicted of murder in the second degree, and had been granted a new trial.

The first question presented in the brief for the plaintiff in error here, defendant in the court below, challenges the action of the Court in requiring the defendant to be arraigned on the information.

The conviction of murder in the second degree under the indictment charging murder in the first degree barred the subsequent prosecution for the greater offense and thereupon the defendant stood charged by indictment with the offense of murder in the second degree, which included also all lesser degrees of unlawful homicide, and as the Criminal Court of Record of Polk County had jurisdiction of the charge then pending against the defendant the Circuit Court no longer had jurisdiction and it became necessary to certify the indictment with the record in the Circuit Court to the Criminal Court of Record. Southworth v. State, 98 Fla. 1184, 125 Sou. 345; Sanford v. State, 75 Fla. 393, 78 Sou. 340.

The former trial in the Circuit Court having been concluded and a new trial granted on motion of the defendant, the defendant then stood in the same position as if he had been charged with murder in the second degree and no trial had been had. Jeopardy ceased upon the granting of a new trial because there was no appeal available to the State

from the judgment granting the new trial. Gibson v. State, 26 Fla. 109, 7 Sou. 376.

The second question presents the contention that where a person has been arraigned on indictment charging murder in the first degree in the Circuit Court, has pleaded not guilty, has had a trial and been convicted of murder in the second degree and thereafter has procured a new trial, and the cause is transferred to the court having jurisdiction over that offense, where it is required under the law to be tried under an information rather than the indictment, that jeopardy attaches when the defendant has been placed on trial in the court to which the indictment has been certified under a good and sufficient information and that because the transcript of the record shows the following incidents to have occurred:

"Be it remembered that at a term of the Criminal Court of Record of the State of Florida, for the County of Polk, held at Bartow on the 17th day of February, in the year of our Lord, One Thousand Nine Hundred and Thirty-six, a cause therein pending wherein the State of Florida was plaintiff and Lyll McLeod was defendant, came on to be heard before the Honorable Robert T. Dewell, Judge of said Circuit Court, at which day came the said parties by their respective attorneys.

"And thereupon, the said issues in manner aforesaid joined between the said parties came on to be tried, and the jurors of the jury aforesaid, whereof mention is herein made, being called, likewise came and were sworn to try the said issue in manner aforesaid joined, and thereupon, the following proceedings were had:

"Mr. Glover: 'I don't believe the defendant has been arraigned.'

"Mr. Martin: 'No, the jury was properly sworn before

the arraignment of the defendant, and I want the record to show that.'

"Mr. Glover: 'I'll ask that the jury be cleared from the jury box before the defendant is arraigned and that the defendant be arraigned before they are sworn.'

"Mr. Martin: 'I object to that because it should have been done beforehand.'

"By the Court: 'I don't think that is prejudicial error as far as the defendant is concerned, therefore, I'll grant the motion.' To which ruling of the Court the defendant did, then and there, except.

"Thereupon, the jury box was cleared, the defendant arraigned and pleading not guilty, the jury was called by the clerk, duly questioned by the County Solicitor and tendered to the defendant's counsel.

"Mr. Martin: 'Comes now the defendant and objects to the recalling of this jury at this time, because a jury has been called, qualified and sworn to try the issues involved between the defendant, Lyll McLeod, and the State of Florida, on the same identical information; said jury having been discharged, the defendant has the constitutional right now not to be put in jeopardy the second time by the swearing of the jury to try the issues in this case.'

"By the Court: 'Motion denied.' To which ruling of the Court the defendant did, then and there, except.

"Mr. Glover: 'I want the record to show that the same jurors who had been called back and sworn before the defendant was arraigned, were placed back in the box and are now the jurors tendered by the State to the defendant to try the case.'

"Thereupon, the jurors aforesaid, were sworn to try the issues in the manner aforesaid joined, and the plaintiff then and there called Mr. Dallas Walker, a material wit-

ness in its behalf, who, after being first duly sworn, testified as follows:"

The defendant was thereby placed in jeopardy a second time by the swearing of a jury before he was arraigned and by the later swearing of the same jury after the arraignment.

The record does not show that the jury was discharged. The jury, according to the showing in the record, was simply called out of the jury box when it was made to appear to the court that the defendant had not been arraigned upon the information which was a new pleading filed against him and the sufficiency of which he might have tested by any appropriate pleading, because the sufficiency of that information had not been determined, so far as the record discloses, by any adjudication. As long as the record affirmatively showed that the defendant had not been arraigned on the information, there was no issue joined for the jury to try and, therefore, no issue for the jury to determine. In Sears v. State, 89 Fla. 490, 104 Sou. 857, we held:

"When the court's attention was called, as appears from the record, to the omission, due to oversight, to arraign the defendant, it was proper to then arraign him and proceed with the trial. Prior to arraignment there was no legal jeopardy and what was done, as shown by this record, was no more than the court's duty in order that a valid judgment could be entered upon the verdict. United States v. Aurandt, 15 N. M. 292, 107 Pac. Rep. 1064, 27 L. R. A. (N. S.) 1181; United States v. Riley, 5 Blatchford 204; State v. Horine, 70 Kan. 256, 78 Pac. Rep. 411; State v. Rook, 61 Kan. 382, 59 Pac. Rep. 653; Browning v. State, 54 Nev. 203, 74 N. W. Rep. 631; Mays v. State, 50 Tex. Crim. 165, 96 S. W. Rep. 329; Disney v. Commonwealth,

9 Ky. L. 413, 5 S. W. Rep. 360; State v. Heard, 49 La. Ann. 375, 21 South. Rep. 632."

The third question challenges the action of the court in denying defendant's motion for a directed verdict. The record discloses no error in that regard.

The fourth question challenges the action of the court in refusing to strike the testimony of C. A. Peterson upon the ground that Peterson had not qualified as an expert before giving expert testimony. Mr. Peterson testified that he was a deputy sheriff and identification officer in the sheriff's office in Dade County; that he operates the finger print bureau and also does firearms identification work for the county; that he had been engaged in that work since 1929 or the early part of 1930. Some of the questions and answers incident to his examination are as follows:

"Q. What training have you had in regard to firearms examination?

"A. I have studied everything that has been published on it that I could get, including three books which were published last year and in 1931 I took a special four weeks course under Col Calvin H. Goddard at the Scientific Laboratories at Chicago.

"Q. Is there any other school in the United States that teaches this—other than that?

"A. The Federal Government has recently started a course; the first one occurred last fall and the second one is in operation now.

"Q. At that time was that the only school?

"A. That was the only one.

"Q. Was that connected with any University?

"A. It was connected with Northwestern University and is now an integral part of the University.

"Q. Does that course teach you the mechanism of fire-arms?

"A. Yes sir, it gives a general outline of the scientific construction and so forth in firearms identification.

"Q. What method or means do you have to identify the different firearms and the bullets fired from the different firearms?

"A. The identification of firearms is made from either bullets which have been fired through the suspected gun or by means of others which are sometimes used.

"Q. Now, outside of that schooling and experience that you have given and what you have read, have you had any particular experience in the different munition factories in the country in regard to finding out the make—the kind of barrels and so on?

"Mr. Martin: 'Objected to as being immaterial and irrelevant and has nothing to do with the issues involved in this case.'

"By the Court: 'Objection overruled.' To which ruling of the Court the defendant did, then and there, except.

"A. In 1932 I made a trip to New England and visited several arms plants—the Remington plant and the Winchester plant and the Colt plant and the Smith & Wesson plants and the Mossberg and Stevens plants and in the factories I made it a point to follow especially the general manufacture of revolvers and in the Springfield arsenal, the manufacture of arms—rifles and more especially the method of rifling.

"Q. The rifling of the barrels of the guns?

"A. Yes sir.

"Q. Have you had experience before in testifying on firearms in courts of this State?

"A. Yes sir.

"Q. On several occasions?

"A. Yes sir.

"Q. What courts have you testified in?

"Mr. Martin: 'Objected to as being immaterial and irrelevant and it's a self serving declaration and has nothing to do with the issues involved in this case.'

"By the Court: 'Objection overruled. To which ruling of the Court the defendant did, then and there, except.

"A. I have testified in the Criminal Court in Dade County; in the Circuit Court in Dade County; the Circuit Court of Highlands County and twice in the Circuit Court of Polk County.

"Q. As a firearms examiner?

"A. Yes sir."

We think the evidence was sufficient to establish the fact that the witness was qualified to testify as a firearms expert and to the extent that he was permitted to testify and that the trial court committed no error in so holding.

The fifth question challenges the correctness of charge given by the court in the following language:

"A doubt which is a mere possible, speculative, imaginary or forced doubt is not a reasonable doubt, but an unreasonable doubt, and for the reason that everything relating to human affairs is open to doubt of this character, such doubt ought not to control or influence you to render a verdict of acquittal where you have an abiding conviction of the truth of the charge as I have indicated."

This portion of the Court's charge must be taken in connection with what immediately followed it in the following language:

"On the other hand, if, after carefully considering, comparing and weighing all of the testimony, there is not an

abiding conviction to a reasonable and moral certainty of the truth of the charge, or if having a conviction, it is yet one of which there is not a moral certainty, the truth of the charge is not made out beyond a reasonable doubt, and there must be an acquittal, because the doubt is reasonable. A doubt which is not suggested by or does not arise from the testimony, or lack of testimony, or evidence, is not a reasonable doubt and should never be considered. In other words, if the testimony produces a conviction of the character I have indicated as being sufficient to prove the charge to the exclusion of a reasonable doubt, you, as jurors, have no right to go outside of the testimony for doubts of any kind."

When we consider the whole charge the case does not fall in line with that of Hampton, *et al.*, v. State, 50 Fla. 55, 39 Sou. 421, nor Gantling v. State, 40 Fla. 237, 23 Sou. 857. There was nothing misleading or confusing about the charge and the record does not show that the defendant requested any further charge on the question of reasonable doubt which was not given.

The sixth question challenges the action of the court in charging the jury, in the general charge, as follows:

"If the evidence is conflicting, you should reconcile it, if you can, upon the theory that all of the witnesses have told the truth. If you cannot reconcile all of the testimony, you may disregard that part thereof which you do not believe and base your verdict upon that which you do believe."

The plaintiff in error relies on the enunciation in Frink v. State, 56 Fla. 62, 47 Sou. 514.

The charge which the court gave in this case did not possess the infirmity of the charge which was condemned in the Frink case. The charge here given was in line with

the enunciations of this Court in Roberts v. State, 90 Fla. 779, 107 Sou. 242; Hicks v. State, 25 Fla. 235, 6 Sou. 441; A. C. L. R. Co. v. Beasley, 54 Fla. 311, 45 Sou. 761, where we held in effect that in the trial of a cause where the evidence is conflicting the jury should reconcile it, if possible, on the theory that each witness has spoken truthfully. If that is impossible the jury may then reject·such testimony as it believes unworthy of belief. See also Bassett v. Board of Bond Trustees, 92 Fla. 292, 109 Sou. 597; Taylor v. State, 98 Fla. 881, 124 Sou. 445.

The seventh question challenges the action of the court in charging the jury as follows:

"Under the law, gentlemen, no greater degree of certainty in proof is required where the evidence is circumstantial than where it is direct, for in either case·you must be convinced of the defendant's guilt beyond a reasonable doubt."·

· The record does not show that the defendant requested any further charge in this regard.

We have considered the record carefully and find that the evidence, though circumstantial, was so strong, cogent and conclusive as to exclude every reasonable hypothesis except that of the defendant's guilt.

Therefore, the judgment should be·affirmed.

So ordered.

ELLIS, R. F., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.