THOMAS, Justice.
The appellant was charged with murder in the first degree alleged to have been committed'by shooting one Hazel Rowland with a pistol while he entertained a premeditated design to kill her. He was found guilty of murder in the second degree and was sentenced to serve the rest of his life in prison.
In his appeal the appellant submits three questions for decision: the propriety of admitting two photographs in evidence, the correctness of a charge on circumstantial evidence, and the sufficiency of the evidence to establish his guilt.
The photographs were taken in the kitchen where Hazel Rowland fell victim to appellant’s gun fire, and in the living room in the same house. In general, the appellant contends .that these pictures were not an accurate portrayal because blood stains had been removed since the homicide was alleged to have been committed, the furniture and furnishings were not the same and one *520 picture showed “only a part” of the living room.
We will spend no time discussing the last objection because we can think of no way a single picture could record the appearance of an entire room. As for the other obj ections, we think the record, which we have perused with the pictures before us, shows that the pictures were a true representation of the locality where they were taken, Young v. State, 85 Fla. 348, 96 So. 381, and that no error was committed by the trial judge when he decided that the objects shown were in the same position as when the homicide occurred, Mardorff v. State, 143 Fla. 64, 196 So. 625, or at least that any dissimilarity was inconsesquential, Dedge v. State, 68 Fla. 240, 67 So. 43.
Our decision that no harmful error, if any error at all, was committed is strengthened by the fact that the jury viewed the premises at the close of the testimony thereby rendering the pictorial evidence “well nigh negligible.” Dedge v. State, supra.
The appellant assails the action of the court in charging the jury that “ ‘[u]n-der the law, * * * no greater degree of certainty in proof is required where the evidence is circumstantial than where it is direct, for in either case you must be convinced of the defendant’s guilt beyond a reasonable doubt.’ ” The charge was taken from the decision of this court in McLeod v. State, 128 Fla. 35, 174 So. 466, 470. The appellant argues that because it was observed in that case that no further charge on the subject was requested and remarked that the evidence though circumstantial, was so strong as “to exclude every reasonable hypothesis except that of the defendant’s guilt” there was no approval of the charge. Evidently it is appellant’s position that because there was no express approval of the charge in the cited case there should be express disapproval of it here. Appellant then concedes that had there been a complete charge with reference to circumstantial evidence the isolated charge would not be objectionable.
As in McLeod v. State, supra, no additional charge was requested in this case by the appellant. Furthermore, we have examined the charge on circumstantial evidence that the trial judge gave on his own account and have found that it contained all the essential elements in charges detailed in the decisions chosen by the appel-ant as criteria by which the charges given in this prosecution should be judged. We feel no hesitancy in holding that in this case the jury were properly and adequately instructed on the manner of evaluating circumstantial evidence, and the cogency it should have before they could base a verdict of guilty upon it.
In presenting his last question the appellant contends that the evidence was not enough to convict him of murder in the second degree. He refers to one case to bolster the position, Mayo v. State, Fla., 71 So.2d 899. It was the gist of that opinion that the state’s theory of the defendant’s crime was so speculative that the jury should not have accepted it. To find a verdict of guilty the jury had to believe that the defendant, who supposedly harbored a grudge against the man he eventually shot, knew that the intended victim would shoot upon slight insult, substituted blank cartridges for the ones in the intended victim’s gun, or caused that to be done, provoked the difficulty and when fired at returned the fire while his antagonist was at defendant’s mercy. In reviewing the case, we are confirmed in the conviction we expressed in the opinion that the theory was so fantastic as to tax the imagination of the most credulous.
We have made a thorough study of the record to determine whether or not there is any merit in the appellant’s third and last question. From the testimony which the jury was justified in believing we get the relationship of the parties which ended so tragically in November 1953. The appellant and the woman he was alleged to have killed were married about ten years before and had lived together most of the intervening years, but in the summer of *521 1953 he obtained a divorce from her and she went to live with her parents. Evidently the friendship between the appellant and his former parents-in-law had not been affected by the divorce for he had visited in their home after it was granted.
At two o’clock in the morning the day before the homicide, the appellant again' appeared at the father’s home — the mother had meanwhile died — and asked for the daughter. It was ascertained by the absence of her car that she had not returned to her home when she quit, work at eleven the night before. After the appellant had been in the house about an hour the appellant’s former brother-in-law and his wife appeared and announced that the appellant’s erstwhile wife had married one •Rowland the night before.
The appellant was visibly shaken by the news and when he left he announced a plan to remain in the neighborhood a while as he wished to see his former wife before he returned to Wauchula where he was living.
The following morning the appellant ‘phoned to learn if the daughter was at home and if her husband had gone to work and when he was told that she was there and the husband was not he announced that he was coming to say good-bye. When the appellant appeared, he and the woman entered the kitchen ostensibly to get a cup of coffee, and the father went into the yard. A few minutes later the father heard a shot and after a short interval a second shot. He rushed into the house and found the appellant holding the woman, who was bleeding profusely, in his arms. The appellant dropped the woman on the floor, ran to his truck, speeded away and surrendered to the police.
The woman died of a bullet that pierced her head from the right temple to the left. There was testimony from which the jury could logically deduce that the muzzle of the weapon was from ten inches to thirty-six inches from the woman’s head when the gun fired, because there was no evidence of searing, singeing, smudging or tattooing, and the wound was not a “contact” wound. The gun was appellant’s, was taken to the house by him, and by him. wds delivered to the police when he surrendered immediately following the shooting.
According to the defendant’s version of the affair, he and the woman sat at the kitchen table having coffee. After a scene in which, he related, she professed her love for him, and while they were seated at a table, he looked over!' his coffee cup and saw that “she had this gun up to her head.” He said “ ‘Hazel, don’t do that’ ” and before he “ ‘could; get to hér — well, it was too late.’” She slumped in- her chair, and dropped the gun to the floor, then he picked up the gun as quickly as he could. “ ‘and' in the hustle and bustle the guru went off again.’ ”
As the man told the story, the woman’ took the gun out of his pocket in some way that was not clear to him, and certainly is not clear to us.
After reading the record of the testimony ■ recorded in this case we are convinced that ’ the jury did not go astray when they decided that the state had proved beyond a reasonable doubt that the appellant murdered his former wife by shooting her through the head while they were seated at a table in her father’s kitchen drinking coffee, even though the evidence was circumstantial for it was inconsistent with any theory but that of guilt. He was obviously motivated by jealously and he went to her home armed with a loaded revolver after he had ascertained that her husband was not there. His tale about the shooting is-so incredible that it did not raise a reasonable doubt of his guilt and the jury were warranted in rejecting it.
We have been shown no error so the judgment is—
Affirmed.
DREW, C. J., and HOBSON and: THORNAL, JJ., concur. .