[Sylvester v. The State.]

# Sylvester *v.* The State.

*Indictment for Murder.*

1. *Organization of grand jury; voluntary appearance of juror drawn but not summoned; summons of person not drawn.*—A person who was regularly drawn and selected as a grand juror, but was not summoned, may voluntarily appear, and thereby subject himself to the control of the court as if he had been summoned; and if a person is summoned who was not drawn and selected, and who does not appear, such summons does not work any irregularity in the organization of the grand jury.

2. *Setting day for trial; presumption of continuance.*—If the trial is not begun on the day set for it, but on the next day, the record should properly show a continuance from one day to the other; and when the record is silent, such continuance will be presumed, in the absence of all evidence to the contrary, and of all objection in the court below.

3. *Competency of juror; who is householder.*—A man who provides for his family, and lives with them in a house which belongs to his wife's statutory estate, of which he has control as husband and trustee, is a householder (Code, § 4732), and competent to serve as a juror.

4. *Dying declarations.*—When dying declarations are proved to have been made under a sense of impending death, their admissibility or effect as evidence is not impaired or affected by the fact that the family of the deceased thought at the time that he would recover; and proof of that fact is not relevant or admissible as evidence.

5. *Appearance of defendant's clothing; relevancy as evidence.*—The absence of all appearance of blood on the clothing of the accused, immediately after the killing, is not a fact tending to his exculpation, when it is not shown, or attempted to be shown, that the nature and character of the wound inflicted on the deceased, or the circumstances under which it was inflicted, were such that stains of blood would probably have been found on the person or clothing of the perpetrator of the crime.

6. *Flight of accused; relevancy of evidence.*—The flight of the accused, at or about the time he is accused or suspected, is relevant and admissible evidence against him, "the force of which depends on its connection with other criminating facts;" and as circumstances tending to show such flight, it may be to proved that search was made for him at his reputed residence, and at places to which it might reasonably be presumed he had gone, and that he could not be found.

7. *Conviction of murder in second degree.*—Under an indictment for murder in the usual form (Code, 991, Form No. 2), a verdict of guilty of murder in the second degree is an acquittal of the higher offense; and on a second trial, after the reversal of the judgment of conviction, although the defendant can not be convicted of murder in the first degree, the jury may find him guilty of the second degree on evidence showing his guilt in the first degree, and the court may so instruct them.

8. *Use of deadly weapon; presumption of malice.*—From the use of a deadly weapon, the law infers an intent to kill, or to do grievous bodily harm; and if the circumstances do not show excuse, justification, or immediate provocation, the presumption of malice is conclusively drawn.

9. *Deadly weapon defined.*—A deadly weapon is not one a blow from which would ordinarily produce death, but one from which, as it was used in the particular case, death would probably result; and whether

the weapon used was, in its nature and character, a deadly weapon, is generally a matter of law for the decision of the court, and not a question of fact for the determination of the jury.

From the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The indictment in this case was found at the November term of said court, 1880, and charged the defendant, Nathaniel Sylvester, with the murder of Jeremiah Lynch, "by stabbing him with some sharp instrument, the exact character or description of which is to the grand jury unknown;" or, as alleged in the second count, "by stabbing him with a knife, a more particular description of which is to the grand jury unknown." On a former trial, the defendant was found guilty of murder in the second degree, and sentenced to imprisonment in the penitentiary for ten years; but the judgment was reversed by this court, during last term, and the cause was remanded.

In the court below, there was no objection, so far as the record shows, either to the organization of the grand jury, or to the sufficiency of the indictment; but the record shows that, in the list of persons drawn as grand jurors, and whom the sheriff was ordered to summon, the names of *Benjamin Burke* and *Spotswood Brown* were written between the names of Charles Hopkins and M. Levy; while the sheriff's return, as copied in the judgment-entry, contains only the name of *Benjamin Brown* between the names of said Hopkins and Levy, and the judgment-entry further recites, that *Benjamin Burke* appeared and was excused by the court, and copies the name of *Spotswood Brown* as one of the jurors who appeared and served; and these matters were urged in this court as irregularities in the formation of the grand jury. The defendant was duly arraigned, and pleaded not guilty; and the court thereupon appointed the 31st July, 1882, for his trial, and ordered a copy of the indictment and of the special *venire* to be served on him one entire day before the trial. The next judgment-entry, which recites the trial, is dated the 1st August, and there is no entry or recital showing that the cause was continued from the day before, the day set for the trial; and this was urged in this court as an irregularity, for which the judgment should be reversed.

When the cause was called for trial, as the bill of exceptions recites, "the prisoner and his counsel being present, the court began the organization of the jury; and the name of C. C. Smith being regularly called as one of the special *venire*, he answered on h's *voir dire*, that he was not a freeholder, but resided, with his family, in a house which his wife owned; and that he supported his family, and was the head of it, but was not otherwise a householder. The State accepted said Smith as

a juror, but the defendant challenged him for cause; which challenge the court disallowed, and the defendant excepted."

The deceased was a policeman, and was stabbed while on night duty, in attempting to arrest or disperse a small crowd of disorderly persons, in May, 1872; and he died, from the effects of the wound, several days afterwards.   Dr. Savage, the physician who was called to him, was examined as a witness for the prosecution, and testified, among other things, "My opinion, as expressed at my second visit, was, that the wound would prove fatal."   Said witness was asked, on cross-examination, "Was that opinion assented to by the family?"   The prosecuting attorney objected to this question, and the court sustained the objection; "the defendant having admitted that the deceased, at the time he made the declaration [?], was in a dying condition, and so believed himself to be.   The defendant's attorney stated to the court, that he expected to prove by the witness that the family of the deceased did not assent to the opinion, but rejected it, and discharged the witness from further attendance on account of it.   The court still refused to allow the witness to answer the question, and the defendant excepted to the refusal.   The defendant's attorney then asked the witness, 'Did the deceased and his family assent to your opinion as to the fatality of the wound?'   The court sustained an objection to this question, on the ground that the defendant admitted the deceased was in such state as to make his declaration [admissible?], and the defendant excepted."

The defendant was arrested in Pensacola, some time after the commission of the offense (the year and month not being shown), by a policeman named Bressingham, who was introduced as a witness for the State, and who was asked by the solicitor, "Had you looked for the defendant in Mobile at any time previous?" The defendant objected to this question, "as immaterial and irrelevant," and reserved an exception to the overruling of his objection; and the witness answered, "that he had looked for him the morning after Lynch was stabbed, but could not find him."   The solicitor then asked, "Where did you look?" and the witness answered, "that he went to a house in Mobile, on the corner of Charleston and St. Emanuel streets, said to be his house, and all over the city, but failed to find him."   To this question and answer, each, objections were interposed by the defendant, and exceptions reserved to their allowance.

Jim Dillard, a witness for the defendant, thus testified: "I remember when Mr. Lynch was stabbed.   I was standing on the corner of Charleston and St. Emanuel streets, and Nat. Sylvester was over to his mother's house.   I heard two shots fired; and he came across the street, and asked me what was the matter.   I told him I did not know, but that I had heard

[Sylvester v. The State.]

two shots fired up the street. He asked me to go up there, and I told him I did not care to go. He and Scott Smith then went that way, but soon came back, being gone not more than three ·or four minutes. I asked them, what was the matter ; and he replied, that he did not know—that a policeman was shot, they ·said, but he did not know. They stayed at my house three or four hours, and then went home, or said they were going home." The defendant's attorney then asked the witness, " Was any blood on his clothes ? " The prosecuting attorney objected to this question, and the court sustained the objection ; to which ruling the defendant reserved an exception.

The court charged the jury, " of its own motion, among other things," as follows : " Malice may be implied from the use of ·a deadly weapon ; so that, if you find from the evidence that the killing was done with a deadly weapon, you may infer that it was done maliciously. *In determining whether or not a weapon used was a deadly weapon, you may look at the result of the blow, the manner in which the weapon was used, the character of the weapon, and the nature of the wound inflicted. For instance, if a man struck another in the breast, with a knife that had a blade three or four inches long, with so much force as would probably produce death, you might say it was a deadly weapon, and might find him guilty of murder;* while, if the blow was on the hand, and used in such a way as would not probably produce death, you might say the weapon was not a deadly weapon." To the italicized portions of this charge the defendant duly reserved exceptions, and also to the refusal of a ·charge asked by him, which was in these words : " Unless the jury believe, from the evidence, that the instrument with which the deceased was stabbed was such that a blow from it would ordinarily produce death, they can not infer malice from the mere fact that the killing was with that instrument."

The court further charged the jury as follows : " Although you should find, from the evidence, that the defendant is guilty of murder in the first degree, this will not work an acquittal ; for, if you find from the evidence that he is guilty of murder in the first degree, you should render a verdict for murder in the second degree." To the giving of this charge the defendant reserved an exception.

G. L. SMITH, for the prisoner, argued all the points reserved ·as above stated, and cited the following authorities : *Shorter v. The State*, 63 Ala. 130 ; *Flinn v. Barber*, 59 Ala. 446 ; *Hall v. The State*, 51 Ala. 9 ; *Corbett v. The State*, 31 Ala. 330 ; *Jordan v. The State*, 52 Ala. 188 ; 1 Brick. Dig. 809, §§ 81, 82.

H. C. TOMPKINS, Attorney-General, for the State, cited *Aaron*

*v. The State*, 37 Ala. 106 ; Clark's Cr. Manual, § 538 ; *Hadley· v. The State*, 55 Ala. 31 ; *Ex parte Nettles*, 58 Ala. 268 ; 1 Whar.. Amer. Crim. Law, 712 ; 4 Barn. & Cr. 255.

BRICKELL, C. J.—We can not perceive that in the organization of the grand jury there was the least irregularity. The fact that two of the persons drawn and selected were not summoned, and yet voluntarily appeared, the one being excused from service by the court, and the other serving, is not an irregularity. Without the service of notice by the sheriff, they could appear voluntarily ; and appearing, they were as subject to the duty of jurors, and to the control of the court, as if they had attended in obedience to a summons. If· it be true that a person was summoned as a juror, who was not drawn and selected, it is also true that he did not appear, and was not put on the jury.

2. The defendant was present in court when the day for the. trial was set. The trial was entered upon on the day succeeding the day set. The presumption from the silence of the record is, that for some sufficient reason the cause was continued over to the day upon which the trial was had. Such a continuance, though not entered on the minutes, as would be more proper, is presumed in the absence of objection and of all evidence to· the contrary.

3. The juror Smith was the head of a family, for which he was providing, and who dwelt with him. Though the title to the premises on which he resided may have been in his wife, as· her husband and trustee, he had of them rightful possession and control. Within the strictest meaning of the term, he was a householder.—*Aaron v. State*, 37 Ala. 106.

4. Whether the family of the deceased were of the opinion that he would recover from, or die of the wounds he had received, was not a relevant inquiry. It was admitted that his declarations, which were introduced in evidence, were made under a sense of impending death ; and the force of the admission, or the weight of the declarations, could not be lessened,. because his family were more hopeful, and believed he would recover.

5. The absence of all appearance of blood on the clothing of the accused, immediately after the killing, was not a fact tending to his exculpation. It was not shown, or offered to be shown, that it was probable from the nature and character of· the wound, or the circumstances under which it was inflicted, stains of blood would have been found on the person or clothing of the perpetrator. A fact or circumstance not having a tendency, direct or immediate, to the proof or disproof of the mat-

ter in issue, ought not to be received as evidence.—*State v. Wisdom*, 8 Port. 511.

6. The flight of a person accused of a crime, at or about the time he is accused or suspected, is a fact which may be received in evidence against him. The force of it as criminating him depends upon its connection with other criminating facts. A search for the accused at the place of his reputed residence, soon after the homicide, and at places to which it was reasonably supposed he had gone, connected with the failure to find him, tended to show that he had fled, and was properly received in evidence. *Bowles v. State*, 58 Ala. 335.

7. Under the present indictment, a conviction could have been had for any or either degree of criminal homicide, of which guilt was shown by the evidence.—Code of 1876, § 4904. The former verdict, finding the defendant guilty of murder in the second degree, operated an acquittal of murder in the first degree. The acquittal was final and conclusive, and was not impaired because of the reversal of the judgment of conviction upon appeal to this court.—*Bell v. State*, 48 Ala. 684; *Berry v. State*, 65 Ala. 117. The defendant could be tried again only for the offense of which he had been convicted, and the degrees of criminal homicide included in it. Murder in the first degree includes every element and ingredient of murder in the second degree. In view of the particular circumstances of the case, the instruction of the City Court, that though the jury were convinced of the defendant's guilt of murder in the first degree, of that offense he could not be convicted, but could be convicted of the less offense necessarily involved in it, murder in the second degree, was proper.

8. The law infers from the use of a deadly weapon an intent to kill, or to do grievous bodily harm, because the man must be taken to intend the necessary and usual consequences of his act. And if the circumstances do not show excuse, or justification, or immediate provocation, the presumption of malice is drawn conclusively.—*Hadley v. State*, 55 Ala. 31; *Ex parte Nettles*, 58 Ala. 268. The instructions to the jury upon this point were more favorable to the accused than he could of right demand.

9. The instruction requested by the appellant was properly refused. It referred to the jury, for consideration and determination, the question whether the weapon employed in the killing was, in its nature and character, a deadly weapon; which is, generally, not a question of fact for the jury, but of law for the decision of the court.—2 Bish. Cr. Law, § 680; *State v. Craton*, 6 Ired. (Law), 164; *State v. West*, 6 Jones (Law), 505. A deadly weapon is one, not, as asserted in the instruction, a blow from which would *ordinarily* produce death, but one from

[Lake v. Security Loan Association.]

which, as it was used, death would probably result. And an instrument or weapon used in inflicting injuries upon the person of another may or may not be esteemed deadly, according to the manner of its use, and the subject on which it is used.—*State v. West, supra.* And in determining, as matter of reason, whether the use of it imports malice, the actual effects produced by it are to be considered. From a consideration of the results of the use of the weapon, and the manner and circumstances of its use, the attention of the jury would have been diverted, if this instruction had been given.

We find no error in the record, of injury to the appellant, and the judgment must be affirmed.