STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JAMES H. WILLIAMS, DEFENDANT-APPELLANT.

Argued April 21, 1959—Decided June 1, 1959.

110

*Mr. Albert G. Besser* argued the cause for defendant-appellant.

*Mr. Brendan T. Byrne,* Deputy Attorney General, Acting Essex County Prosecutor, argued the cause for plaintiff-respondent (*Mr. John F. Crane,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

FRANCIS, J. Defendant was indicted for murder by the Essex County grand jury. The indictment was framed in the short form which has been traditional in New Jersey for many years and which is authorized by the *Rules of Criminal Practice. R. R.* 3:4–3(*b*). See *Graves v. State,* 45 *N. J. L.* 203 (*Sup. Ct.* 1883), affirmed 45 *N. J. L.* 347 (*E. & A.* 1883). It simply charged that the accused "did willfully, feloniously and of his malice aforethought, kill and murder Salvador Touza, * * *." Williams was tried thereunder for first degree murder. At the conclusion of the trial, the court submitted to the jury for determination the following issues: (1) first degree murder, (2) first degree murder with a recommendation of life imprisonment, (3) second degree murder, (4) manslaughter. And, of course, an instruction with respect to a verdict of not guilty

was given also. After deliberation, a verdict of "guilty of murder in the second degree" was returned.

On appeal, this court reversed the conviction of second degree murder for trial errors and remanded the cause for a new trial. 29 *N. J.* 27 (1959). Thereafter, defendant moved for admission to bail, primarily upon the ground that by reason of the jury verdict he had been acquitted of first degree murder and on retrial could not be found guilty of more than second degree murder. Accordingly, he contended that his case no longer involves a capital offense and so he is entitled to bail in the interim under *Article* I, *paragraph* 11, of the *New Jersey Constitution of 1947*, which provides:

"All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great."

This mandate has been incorporated *verbatim* into *R. R.* 3:9–1(*a*) of the *Rules of Criminal Practice*. The motion was denied because "the offense with which defendant is charged is murder." We granted leave to appeal.

Defendant's position is that to put him to trial again on the charge of first degree murder would be to subject him to double jeopardy. The State answers: (a) that he was not acquitted of first degree murder, and (b) that by appealing from the second degree conviction and obtaining a judgment of reversal, he waived absolutely any jeopardy claim. More particularly, it is contended that the crime of murder is a single offense in New Jersey which is divided into degrees only for purposes of punishment. And thus, says the State, the conviction of second degree murder means in the present context that defendant was found guilty of the unitary offense of murder, which finding was expunged on appeal, leaving the record barren of any support for the bar of *autrefois acquit* or former jeopardy.

The precise problem presented has not been dealt with directly in any appellate tribunal of this State. In 1911

it was held in the Essex County Court of Oyer and Terminer that a defendant who, by his own act of appeal, secures a reversal of a second degree murder conviction, "stands in the same position as though he had never been tried upon the indictment," and consequently is liable to further prosecution for first degree murder. *State v. Leo, 34 N. J. Law J. 340 (O. & T.* 1911). No appeal was taken. *Dictum* lending support for that view may be found in *State v. O'Leary,* 110 *N. J. L.* 36 *(E. & A.* 1933), and *State v. King,* 106 *N. J. L.* 338 *(E. & A.* 1930).

Many of our sister states have expressed themselves on the question. And, as the footnote to Mr. Justice Frankfurter's dissent in *Green v. United States, 355 U. S.* 184, 216, 78 *S. Ct.* 221, 2 *L. Ed. 2d* 199 (1957) (to be discussed *infra*), indicates, they are almost evenly divided as to the proper principle to be applied. Of the 36 states involved, 19 permit retrial for the greater offense following a successful appeal from conviction of a lesser included offense (New Jersey is placed in this group on the trial court precedent of *State v. Leo, supra*); 17 do not. It may be noted also that of the 19 states referred to, 13 of them allow retrial of the greater offense because of a specifically controlling or influential constitutional or statutory provision. Some of the statutes say (as in Oklahoma, for example) that "[a] new trial is a re-examination of the issue in the same court, before another jury, after a verdict has been given. The granting of a new trial places the parties in the same position as if no trial had been had, * * * and the former verdict cannot * * * be pleaded in bar of any conviction which might have been had under the indictment or information." *Comp. St.* 1921, § 2753. Others of them (as in New York) simply provide that "the granting of a new trial places the parties in the same position as if no trial had been had," and that "when a new trial is ordered, it shall proceed in all respects as if no trial had been had." *Code Cr. Prac.,* §§ 464, 544. See footnotes to *Annotation, "Conviction of Lesser Offense as Bar,"* 61

*A. L. R. 2d* 1141, 1189–1196 (1958). In connection with the 17 states which regard retrial of the higher offense as violative of the safeguard against double jeopardy, Justice Frankfurter's dissent in *Green, supra,* points out that in two of the states, Virginia and Texas, the result is based to some extent upon statutes prohibiting such retrial, and in New Mexico on a constitutional provision to the same effect. 355 *U. S.,* at *page* 219, 78 *S. Ct.* at *page* 240.

██ Since our Supreme Court has not expressed itself in this important field, we are free to adopt the rule which, compatibly with the common law, pertinent statutes and the 1947 *Constitution,* best serves the rights and liberties of the people of New Jersey. *Article* I, *paragraph* 11, of our Constitution bars double jeopardy in this wise:

"No person shall, after acquittal, be tried for the same offense."

Long before that great safeguard of individual freedom first appeared in any New Jersey constitution, it was firmly imbedded in the common law of this State, *The State v. Cooper,* 13 *N. J. L.* 361 (*Sup. Ct.* 1833) ; *State v. Mowser,* 92 *N. J. L.* 474, 485 (*E. & A.* 1919), and of England, where it was regarded as a universal maxim. *Chase's Blackstone* (*3d Ed.* 1890), 1019. The reason for its subsequent inclusion in our Constitution was to cloak it in all the dignity of an organic right and to declare as fundamental that after acquittal no person shall be brought into jeopardy of his life or liberty again for the same offense. Attention is drawn inevitably to the fact that *Article* I mentions acquittal only and does not speak of conviction. As Justice Jacobs noted recently in *State v. Roller,* 29 *N. J.* 339, 344 (1959), the particular "phraseology was used to insure against the contention that a defendant may be entitled to immunity from further trial where his first trial ends, not in acquittal, but in a jury disagreement or comparable indecisive disposition." As has been indicated, the common-law bar against a second trial or punishment after convic-

tion was well known and recognized before (*Cooper, supra,* 1833·) and after (*Mowser, supra,* 1919) the 1844 Convention, and subsequent to that of 1947 as well. (*State v. Labato,* 7 *N. J.* 137, 143 (1951)). And, of course, this common-law doctrine of *autrefois convict* persists in full vigor to this day.

▉▉ The significance of the term "same offense" is not limited to the same offense as an entity and designated as such by legal name, but it comprehends also any integral part of such offense which may subject the offender to indictment and punishment. *State v. Mowser, supra,* at *page* 483 of 92 *N. J. L.* Where a lesser offense is a necessary ingredient or component part of the principal or greater offense and grows out of the same transaction, conviction or acquittal of the lesser bars further prosecution for the greater crime. *The State v. Cooper, supra,* 13 *N. J. L.* at *page* 372; *State v. Greely,* 11 *N. J.* 485 (1953); and see *R. R.* 3:7–9(*c*). The circumstances of the present case (as detailed in the earlier opinion to which reference has been made) leave no doubt that second degree murder was an integral part of the first degree murder charged against defendant by the State. The "facts that constituted murder in the second degree were all necessary parts and constituents of murder in the first degree, and the conviction of the lesser crime under the charge of the higher crime which embraced it was, upon well-known principles, entirely normal." *Graves v. State, supra,* 45 *N. J. L.* at *page* 206.

This brings us to the more difficult and more controversial question of whether defendant was acquitted of first degree murder by the verdict which convicted him of second degree murder.

▉▉ The indictment against Williams was sufficient to warrant charges of first degree murder, second degree murder and manslaughter. But the greater offense included its lesser components and so conviction could have been had of the highest offense charged or of any lower component, guilt of which was proved beyond a reasonable doubt. Murder

in the first degree is defined by statute to be a killing which is accomplished "by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which is committed in perpetrating or attempting to perpetrate arson, burglary, kidnapping, rape, robbery or sodomy * * *. Any other kind of murder is murder in the second degree." *N. J. S.* 2*A*:113–2. The plea of not guilty put in issue defendant's guilt or innocence of each degree of murder and of manslaughter.

■■ In cases such as this the Legislature has imposed a mandate to be followed by the jury with respect to the crime of which the defendant is found guilty. The cited enactment provides further that "[A] jury finding a person guilty of murder shall designate by their verdict whether it be murder in the first degree or in the second degree." The requirement must be complied with and a statement in the verdict of the degree of murder of which the defendant is found guilty is a specific prerequisite. To do so is a "solemn obligation of the jury in a matter of the utmost importance." *State v. Greely,* 11 *N. J. supra,* at *page* 491. Speaking of the statute, the former Supreme Court in *State v. Turco,* 98 *N. J. L.* 61, 63 (*Sup. Ct.* 1922), said:

"Under that statute, * * * according as the defendant 'shall or shall not be proved to have committed the crime of murder, he will be convicted or acquitted; and if convicted, according as it shall be proved that he committed it under circumstances which characterize the one degree or the other, so it will be found or adjudged with a view to his punishment.' The jury before whom the trial is had, if they find the defendant guilty, *are required to find this fact,* and to designate by their verdict whether it be murder in the first degree or in the second degree." (Emphasis added)

A verdict which fails to follow the legislative *fiat* is fatally defective and no sentence can be pronounced thereon. *State v. Greely, supra; State v. Turco, supra.*

In the present case, after a period of deliberation the jury returned with a verdict of "guilty." The trial court, obviously mindful of their imperative duty to find the

degree of murder, sent them back for further consideration with the statement:

"You will recall my charge, ladies and gentlemen. You will recall that I instructed you that in the event you found the defendant guilty, you *must find* him guilty of murder in the first degree with no recommendation, guilty of murder in the first degree with a recommendation of life imprisonment, guilty of *murder in the* second degree, or guilty of manslaughter." (Emphasis added)

Thereafter, in response to the directive, they returned a verdict of "guilty of murder in the second degree."

 Did that verdict acquit defendant of first degree murder? As indicated by the United States Supreme Court in *Green v. United States, supra,* and by the *A. L. R.* annotation, *supra,* in many jurisdictions the rule has been firmly settled that a finding of guilt of a lesser included offense operates by implication as an acquittal of a higher offense of which it is an essential element. Such exoneration is said to be an "irresistible implication," *Stuart v. Commonwealth,* 69 *Va.* (28 *Gratt.*) 950 (*Sup. Ct. App.* 1877); the verdict, though general in its terms, must, by legal operation, amount to an acquittal of every higher offense charged in the indictment than the particular one of which the prisoner is found guilty, *State v. Harville,* 171 *La.* 256, 130 *So.* 348 (*Sup. Ct.* 1930); it "operates as an acquittal of all the degrees above it," *State v. Steeves,* 29 *Or.* 85, 43 *P.* 947, 954 (*Sup. Ct.* 1896); the "silence of the verdict" as to the higher offense is recognized as the "same effective acquittal, attended with as much forcefulness as though it were fully expressed." *Johnson v. State,* 27 *Fla.* 245, 9 *So.* 208, 212 (*Sup. Ct.* 1891). As far back as 1854, when on a murder indictment the accused was convicted of manslaughter, the Supreme Court of Illinois said:

"In contemplation of law, the jury rendered two verdicts as to him; one acquitting him of the murder of Story; the other convicting him of the manslaughter of Story. He was thus legally tried for

the offense of murder and acquitted." *Brennan v. People*, 15 *Ill.* 511 (1854).

See also: *Sylvester v. State*, 72 *Ala.* 201 (*Sup. Ct.* 1882); *Johnson v. State*, 29 *Ark.* 31, 21 *Am. Rep.* 154 (*Sup. Ct.* 1874); *McLeod v. State*, 128 *Fla.* 35, 174 *So.* 466 (*Sup. Ct.* 1937); *Commonwealth v. Deitrick*, 221 *Pa.* 7, 70 *A.* 275 (*Sup. Ct.* 1908), all of which applied the same rule where the trial was for first degree murder and the conviction was of murder in the second degree.

The most noteworthy recent case is *Green v. United States, supra,* where the defendant was indicted for a felony murder arising out of the crime of arson. He was convicted of arson and second degree murder, won a reversal, and was again tried for murder in the first degree. The Supreme Court adopted the rule under discussion, saying:

"Green was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter. In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder. * * * In brief, we believe this case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.'" 355 *U. S.*, at *pages* 190, 191, 78 *S. Ct.* at *page* 225.

The dissent in *Green* suggests that to recognize an acquittal of the higher degree of murder as an emanation of a verdict of second degree is to engage in speculation. 355 *U. S.*, at *page* 214, 78 *S. Ct.* at *page* 237. In our judgment, fair administration of the criminal law engaged in, as it must be, with an eye to the precious constitutional safeguard against double jeopardy, requires acceptance of the implication of exoneration. This is particularly true in our State where, by virtue of the statutory command, the jury has its attention called to its specific duty to find and specify the defendant's guilt according to the degree which

the evidence supports beyond a reasonable doubt. And it will be recalled that in the present case, upon returning an invalid verdict of guilty the jury was expressly reinstructed to find guilt of first or second degree murder, or of manslaughter, following which they declared the extent of criminal responsibility to be second degree murder. Thus the force of the factual as well as of the legal imputation of acquittal of the higher offense is heightened.

The State argues that the indictment here was for murder; that the offense charged was murder, and that the conviction was for murder. It says, further, that the specification of degrees in the statute does not alter the unitary character of the offense because the degrees relate only to the matter of punishment. We cannot agree. Not only is the punishment radically different depending upon the degree of murder found, but guilt of first degree murder requires higher and more grievous elements of criminality than is the case with homicide of the lesser degree. For purposes of the defense of double jeopardy, it seems manifest that the second degree murder must be deemed a lesser included offense. Compare *State v. Brown*, 22 *N. J.* 405 (1956). Obviously, if a defendant were convicted of second degree murder and did not appeal therefrom, the prosecution could not retry him for the higher offense. Such is the indication of the landmark case of *State v. Cooper, supra,* where, after the defendant was convicted and sentenced for arson, the State was precluded from trying him for a death which resulted from the burning of the dwelling house.

Until recently the courts of California accepted the degree of offense distinction advocated here by the State. After the decision in *Green, supra,* however, the Supreme Court of that State discarded the view as unsound, saying:

"The elements necessary for first degree murder differ from those of second degree murder * * *. A jury impliedly decides that the necessary element of the greater crime is lacking under the evidence and returns a verdict finding the defendant guilty of the lesser degree."

And:

"It appears to us that if the spurious distinction made by the California cases is perpetuated in the case at bar we would be giving our constitutional prohibition against twice in jeopardy a 'narrow, grudging application' unsupported by either logic or reason." *Gomez v. Superior Court,* 50 *Cal.* 2d 640, 328 *P.* 2d 976, 979, 982 (1958).

 Although no appellate decision exists in this State which has established the rule to be applied in the event of a second degree murder verdict, in our view the doctrine propounded in the cases cited above chart a clear path to the result which meets the demands of justice. Furthermore, assaying the effect of such a verdict, we cannot overlook the long-settled presumption that the jury understood and adhered to the court's instructions and convicted defendant of second degree murder only because the evidence satisfied them of his guilt of that offense. *State v. Newman,* 128 *N. J. L.* 82, 84 (*Sup. Ct.* 1942); *Hall v. United States,* 84 *U. S. App. D. C.* 209, 171 *F.* 2d 347 (*D. C. Cir.* 1948); *People v. Tarantino,* 45 *Cal.* 2d 590, 290 *P.* 2d 505 (*Sup. Ct.* 1955); *Walker v. People,* 126 *Colo.* 135, 248 *P.* 2d 287 (*Sup. Ct.* 1952); *Kelley v. State,* 231 *Ind.* 671, 110 *N. E.* 2d 860 (*Sup. Ct.* 1953); *Weber v. Commonwealth,* 303 *Ky.* 56, 196 *S. W.* 2d 465 (*Ct. App.* 1946); *Schluter v. State,* 151 *Neb.* 284, 37 *N. W.* 2d 396 (*Sup. Ct.* 1949). *Cf. Erwin v. Hudson County,* 136 *N. J. L.* 560, 565 (*E. & A.* 1948); *Middleton v. Public Service Co-Ordinated Transport.,* 131 *N. J. L.* 322, 324 (*E. & A.* 1944); *Moore v. Public Service Coordinated Transport.,* 15 *N. J. Super.* 499, 510 (*App. Div.* 1951); *Gurtman v. Harris,* 9 *N. J. Misc.* 1064, 1066 (*Sup. Ct.* 1931). Accordingly, we hold that when the jury announced that Williams was guilty of the specified degree of murder, they affirmed by irresistible implication that he was not guilty of first degree murder. A verdict of that type must operate as an acquittal of every crime of a higher grade, of which he could have been convicted under the issues framed by the indictment. *Cf. State v. Newman, supra,* 128 *N. J. L.* at *page* 84.

 Thus, we are brought to the final question to be adjudicated before reaching the application for bail. What is the effect of the reversal of the conviction of second degree murder and the order for a new trial, which came about as the result of the defendant's appeal? Here we enter the field of conflicting authority to which reference was made at the outset of this opinion. As has been indicated, some states hold that when a defendant who has been convicted of a lesser offense appeals therefrom, he waives absolutely any protection, constitutional or otherwise, against double jeopardy, and if the conviction is reversed, he is subject to retrial for any greater offense covered by the indictment of which the lesser was an essential element. Others follow the limited waiver theory and declare that the appeal operates as a waiver of further jeopardy only with respect to the particular transgression of which the defendant was convicted, and if such conviction is reversed, retrial of that offense may be had. *"Defendant's Waiver of Double Jeopardy by Appealing Conviction for a Lesser Included Offense,"* 66 *Yale L. J.* 592 (1957).

 In the administration of the constitutional prohibition against placing an accused's life at stake a second time for the same offense, the circumstances constituting the first jeopardy have been defined. The general rule seems to be that when a person has been subjected to a valid indictment, has been arraigned thereon and pleaded thereto, and has been put to trial before a court of competent jurisdiction and a jury has been impaneled and sworn, he is in jeopardy. Thereafter, if the rule were accorded its full and unqualified impact, the trial would have to proceed to a normal conclusion; discharge of the jury before that time without the defendant's consent would be equivalent to an acquittal and retrial would be barred. But in some situations, even after the exposure began, the law recognized that it would be unjust and opposed to the public interest to say that an abortive ending of the trial before verdict created a bar to further trial. Thus, because realistically

there had been no exposure to conviction at all, the doctrine evolved that if the trial was terminated or the jury discharged before verdict because of incapacitating illness of the judge or a juror or jurors or of the defendant, or misconduct or disqualification of some members of the jury, or on account of an untoward incident that renders a verdict impossible, or some undesigned matter of absolute necessity, or the failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed, subsequent prosecution for the offense was not barred. *State v. Locklear,* 16 *N. J.* 232, 235 (1954); *Smith and Bennett v. State,* 41 *N. J. L.* 598, 601 (*E. & A.* 1879); *Wade v. Hunter,* 336 *U. S.* 684, 69 *S. Ct.* 834, 93 *L. Ed.* 974 (1949); *Wharton's Criminal Law and Procedure* (1957), § 141.

Additionally, the authorities in this country came into agreement that a person who is convicted of a particular offense and thereafter obtains a reversal on appeal on account of trial errors, may be put to retrial *of the offense established by the conviction. Smith and Bennett v. State, supra; State v. Edelman,* 26 *N. J. Super.* 588 (*App. Div.* 1953); *Green v. United States, supra,* at 355 *U. S.* 189, at 78 *S. Ct.* 224; *Wharton, supra,* § 142. Thus, it is plain that on reversal of Williams' conviction of second degree murder, no repetition of his jeopardy would result from retrial for that offense. The proceeding is simply a continuation of his original jeopardy. He is said to have waived the defense by successfully attacking and expunging the judgment which would support such a plea. But by taking the appeal and obtaining a reversal of the second degree conviction, should he be held to have waived the acquittal of first degree murder and to have exposed his life again to possible forfeit at a reprosecution?

The principle recently advanced by the United States Supreme Court in *Green v. United States, supra,* is directly in point. The Government charged that Green waived the constitutional protection against double jeopardy when he secured a reversal of the second degree murder conviction.

The court rejected the claim, saying:

"Reduced to plain terms, the Government contends that in order to secure the reversal of an erroneous conviction of one offense, a defendant must surrender his valid defense of former jeopardy not only on that offense but also on a different offense for which he was not convicted and which was not involved in his appeal. Or stated in terms of this case, he must be willing to barter his constitutional protection against a second prosecution for an offense punishable by death as the price of a successful appeal from an erroneous conviction of another offense for which he has been sentenced to five to twenty years' imprisonment. As the Court of Appeals said in its first opinion in this case, a defendant faced with such a 'choice' takes a 'desperate chance' in securing the reversal of the erroneous conviction. The law should not, and in our judgment does not, place the defendant in such an incredible dilemma. Conditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy." 355 *U. S.*, at *pages* 193, 194, 78 *S. Ct.* at *page* 226.

Of course, the court was construing and applying the Fifth Amendment of the Federal Constitution. It has been suggested that the Amendment is applicable to the states as well as the national government by virtue of the due process clause of the Fourteenth Amendment. See *Ciucci v. State of Illinois,* 356 *U. S.* 571, dissent at *page* 575, 78 *S. Ct.* 839, 841, 2 *L. Ed. 2d* 983 (1958); *Hoag v. State of New Jersey,* 356 *U. S.* 464, dissent at *page* 477, 78 *S. Ct.* 829, 837, 2 *L. Ed. 2d* 913 (1958). Regardless of that issue (into which we do not intrude), the effect of the pertinent clause of our Constitution is substantially the same as that of the Fifth Amendment in the context of the present case. And even though the *Green* opinion is not controlling, it is influential as well as persuasive.

As we have noted, the verdict of the jury did two things: it acquitted Williams of first degree murder, and found him guilty of second degree murder. On appeal, he did not seek relief from the acquittal. His prayer related only to the offense of which he claimed to have been unjustly convicted. Having been exonerated of the higher crime, it is wholly technical and unrealistic to believe or to presume that he

would voluntarily place himself in peril of a retrial upon that charge. Yet the State would force such a conclusive presumption on him as the price of a successful attack upon the adverse part of the judgment. This court in the earlier opinion did not review the acquittal; it simply considered what was presented, *i. e.,* the validity of the conviction of second degree murder, and it reversed that finding of the jury and ordered a new trial. *Cf. Green v. United States, supra,* 355 *U. S.* at *page* 193, 78 *S. Ct.* at *page* 226. To declare that the reversal forfeited the unchallenged finding is to thwart fundamental principles of double jeopardy. *Hurt v. State,* 25 *Miss.* 378, 59 *Am. Dec.* 225 *(Sup. Ct.* 1853). If we adopted such a result, then a defendant would be compelled to submit to a verdict no matter how unjust or erroneous, lest by disturbing it in supplication for his legal rights, he might place his life again in danger of forfeit. No just law can impose such a fearsome choice. As the Supreme Court of Iowa said in *State v. Tweedy,* 11 *Iowa* 350 (1860):

> "[T]he rule is not very humane, to say the least of it, which says to the prisoner, you must abide the verdict, however unjust or erroneous, or if you do not we will give you a new trial and re-try you for an offense of which the jury have acquitted you."

And further, speaking of the argument advanced by the State in this case that the verdict is necessarily an entity and must stand or fall as such:

> "But then this idea of the verdict being an entirety is technical, rather than real and practical. It will not do to thus controvert about terms and abstractions on a question involving the life and liberty of the citizen."

In our judgment, the entity theory is a fiction unworthy of adoption in the face of the constitutional prohibitions against multiple prosecutions. Moreover, it is opposed to principles of fundamental fairness in the administration of the criminal law which achieved their content even farther

back than Magna Charta. *Cf. Ex parte Lange,* 18 *Wall.* 163, 21 *L. Ed.* 872 (1874). Accordingly, we hold the view that in taking the appeal defendant waived his constitutional protection only to the extent of his attack upon the conviction. When that conviction was expunged, the record stood as if he had never been in jeopardy as to it, and retrial of the charge of second degree murder is in order.

It seems proper to suggest here that on the retrial all of the relevant evidence relating to the circumstances of the killing may be introduced. But at the conclusion of the proofs the trial court must limit the issues to be determined by the jury to murder in the second degree, manslaughter or acquittal. *Sylvester v. State, supra; Johnson v. State (Ark.), supra; Johnson v. State (Fla.), supra; State v. Steeves, supra; Commonwealth v. Deitrick, supra.*

The principle which we adopt here goes no farther than the boundaries and necessary implications of the case. It is conceivable that a jury might return a bizarre verdict convicting a defendant of an offense which was not submitted for determination or not within the issues or not a lesser necessarily included offense under *R. R.* 3 :7–9 (*c*). For example, in a felony murder case where the only issue involved, and the only issue submitted to the jury, is murder in the first degree or acquittal, a jury might return a verdict of second degree murder on its own initiative, without instruction from the court and perhaps even contrary to the express instructions defining the issues. Such hypothetical problems are not within the scope of this opinion and are expressly reserved. See the "nature of the error" discussion, 66 *Yale L. J., supra,* at *pp.* 598–601.

In light of the state of the law as we have found it to be, should the defendant have been admitted to bail pending his retrial? *Article* I, *paragraph* 11 of the 1947 *Constitution* provides:

"All persons shall, before conviction, be bailable * * * except for capital offenses when the proof is evident or presumption great."

■ A capital offense connotes one for which the death penalty may be imposed. *In re Corbo,* 54 *N. J. Super.* 575 (*App. Div.* 1959), certification denied 29 *N. J.* 465 (1959). In a choice between hazarding his life at a trial and forfeiting bail, man is subject to a strong urge to prefer the latter. But, as in the present instance, when by judicial declaration of the highest court of the State the accused is no longer subject to loss of his life, the reason for the rule no longer exists. Therefore, by virtue of the Constitution, the offense is bailable, and bail should be fixed in an amount bearing reasonable relation to the outstanding charge and the possible punishment in the event of conviction. *In re Corbo, supra,* 54 *N. J. Super.* at *page* 585; *State v. Harville, supra.*

The order of the County Court is reversed and the record remanded for proceedings consistent herewith.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.