JUSTICE ALBIN,
dissenting.
More than forty years ago in State v. Gregory, this Court exercised its broad administrative power under the New Jersey Constitution to provide greater double-jeopardy protection to the people of New Jersey than afforded by the United States Constitution. 66 N.J. 510, 518-19, 522, 333 A.2d 257 (1975). We rejected the United States Supreme Court’s same-elements test for determining whether successive indictable prosecutions are barred for double-jeopardy purposes and, instead, adopted a rule that barred such prosecutions based on the same conduct. Id. at 522, 333 A.2d 257; see also R. 3:15—1(b); State v. Williams, 172 N.J. 361, 368, 799 A.2d 470 (2002); State v. Yoskowitz, 116 N.J. 679, 699-704, 563 A.2d 1 (1989).
Later, we construed our State Constitution’s Double Jeopardy Clause to incorporate the same-evidence test—an alter ego of the same-conduct test—to bar successive prosecutions involving non-indictable offenses, see State v. De Luca, 108 N.J. 98, 527 A.2d 1355, cert. denied, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); State v. Dively, 92 N.J. 573, 458 A.2d 502 (1983), and we adopted a court rule requiring the joinder of non-indictable of *102 fenses with indictable offenses arising from the same conduct, R. 3:15-3. Our case law makes clear that we have embraced the same-conduct test through our constitutional rulemaking authority, see Williams, supra, 172 N.J. at 367-68, 799 A.2d 470, and through our State Constitution’s Double Jeopardy Clause, see De Luca, supra, 108 N.J. at 107-08, 527 A.2d 1355. We also have determined that notions of fundamental fairness may bar successive prosecutions based on the same conduct. See Yoskowitz, supra, 116 N.J. at 704-09, 563 A.2d 1.
Today, the majority reverses course and constricts the interpretation of our State Constitution’s Double Jeopardy Clause to bar successive prosecutions based solely on the same-elements test, thus aligning itself with the federal double-jeopardy standard, which has proven to be inconstant. This move is at complete odds with the architecture of our joinder rules and double-jeopardy jurisprudence. Despite today’s decision, our court rules requiring the joinder of all offenses arising from the same conduct remain intact, and we have already determined that the failure to join indictable offenses arising from the same conduct, as required by Rule 3:15—1(b), will result in the dismissal of a second prosecution. Williams, supra, 172 N.J. at 368, 799 A.2d 470.
The immediate impact of the majority’s decision is that our citizens will no longer have enhanced double-jeopardy protection for non-indictable offenses. In such cases, only the same-elements test, not the same-conduct test, will bar successive prosecutions.
Thus, if a defendant is acquitted of possession with intent to distribute drugs, he cannot afterwards be prosecuted for the disorderly persons offense of possession because both offenses share the same elements. However, if as occurred here, the possession charge is amended to the disorderly persons offense of loitering to possess or distribute drugs, the second prosecution can proceed because the possession-with-intent-to-distribute and drug loitering charges do not share the same elements. According to the majority, the second prosecution is not barred even though the *103 defendant possessed the same drugs, on the same street corner, at the same time.
The majority concedes that this result might well be fundamentally unfair. There is no sound reason to alter a workable constitutional doctrine to one that could lead to unjust outcomes and that would require the remedy of the fundamental-fairness doctrine. Notably, the majority makes clear that fundamental fairness is not offended if the defendant is acquitted of disorderly drug loitering and then prosecuted for an indictable offense of possession arising from the same conduct.
Additionally, under the majority’s new double-jeopardy paradigm, the State can prosecute an accused for the disorderly persons offenses of possession of drugs, possession of drug paraphernalia, and loitering to obtain drugs, all arising from the same conduct, in three separate trials because the three offenses do not share the same elements. This scenario too the majority does not consider to be fundamentally unfair. Countless similar fact patterns can be conjured under the majority’s new rule. Until today, such multiple prosecutions would have been barred under our state-law double-jeopardy jurisprudence.
Under the regressive approach adopted by the majority, the State will be the ultimate beneficiary, and the accused will pay the price for the State’s failure to join non-indictable offenses. That approach cannot be squared with the principles of fairness that previously animated our double-jeopardy jurisprudence. For those reasons, I respectfully dissent.
I.
The double-jeopardy guarantees of our Federal and State Constitutions protect an accused from multiple prosecutions and multiple punishments for the same offense.[1] See North Carolina v. *104 Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-65 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); De Luca, supra, 108 N.J. at 102, 527 A.2d 1355. The animating principle underlying the Double Jeopardy Clause is that
the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
[Green v. United States, 356 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957).]
The heart of the double-jeopardy issue before us is whether the offense for which defendant was convicted in the first prosecution is the “same offense” for which he was tried in the second prosecution. See De Luca, supra, 108 N.J. at 102, 527 A.2d 1355.
The same-elements test—first adopted by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)—was the long-prevailing standard for determining whether a subsequent prosecution was for the “same offense” as in a prior prosecution. See Kirstin Pace, Fifth Amendment—The Adoption of the “Same Elements” Test: The Supreme Court’s Failure to Adequately Protect Defendants from Double Jeopardy, 84 J. Crim. L. & Criminology 769, 772 (1994). Over time, however, the rigidity of that standard came into question. Id. at 772-75.
In 1970, the United States Supreme Court invoked collateral estoppel to bar a subsequent prosecution for the same offense, electing not to apply the Blockburger same-elements test.[2] Ashe v. *105 Swenson, 397 U.S. 436, 443-47, 90 S.Ct. 1189, 1194-96, 25 L.Ed.2d 469, 475-77 (1970). Justice Brennan, while concurring with the application of collateral estoppel, opined that “same offense” in the Double Jeopardy Clause should be “construed to [mean] the ‘same transaction’ ”—all the events “growling] out of a single criminal act, occurrence, episode, or transaction.” Id. at 453-54, 460, 90 S.Ct. at 1199, 1202, 25 L.Ed.2d at 481, 484 (Brennan, J., concurring).
Following Justice Brennan’s lead, we rejected the Blockburger standard in 1975 in favor of the “same transaction” or “same conduct” test. See Gregory, supra, 66 N.J. at 518-19, 333 A.2d 257. In so doing, we utilized the “broad administrative and procedural powers vested in us by our State Constitution” in Article VI, Section II, Paragraph 3, rather than turn to the Double Jeopardy Clause of Article I, Paragraph 11. Id. at 518, 333 A.2d 257.
Gregory involved the sale of a single glassine envelope of heroin to an undercover police officer by the defendant while in his apartment. Id. at 511. The defendant had retrieved the heroin envelope from a stash of similar envelopes in his bathroom’s medicine cabinet. Ibid. The State first prosecuted and convicted the defendant of the heroin sale and later charged, prosecuted, and convicted him of possession and possession with intent to distribute the heroin in his medicine cabinet. Id. at 511-12.
Relying on Justice Brennan’s concurrence in Ashe v. Swenson, section 1.07(2) of the Model Penal Code, notions of fairness, and the defendant’s reasonable expectations, we reversed the drug-possession convictions, concluding that “a defendant shall not be subject to separate trials for multiple offenses ‘based on the same conduct or arising from the same criminal episode.’ ” Id. at 518-19, 522.
Two years after Gregory, we adopted a mandatory joinder rule, which now reads:
*106 [A] defendant shall not be subject to separate trials for multiple criminal offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction and venue of a single court.[3]
[fl. 3:15—1(b) (1977) (amended 1987) (emphasis added).]
The operative language in the Rule is identical to the language in N.J.S.A. 2C: 1—8(b) of the Code of Criminal Justice entitled “Limitation on separate trials for multiple offenses.” This Court has made clear that it will bar the successive prosecution of indictable offenses arising from the same conduct when the State has failed to join those offenses in accordance with Rule 3:15—1(b). See Williams, supra, 172 N.J. at 368, 799 A.2d 470; Yoskowitz, supra, 116 N.J. at 699-704, 563 A.2d 1.
II.
This Court reached a similar result in cases involving the failure to join nonindictable charges by invoking the Double Jeopardy Clause of our State Constitution. See De Luca, supra, 108 N.J. at 101-08, 527 A.2d 1355; Lively, supra, 92 N.J. at 578-90, 458 A.2d 502. In Dively, supra, this Court broadly defined the term “same offense” to encompass “any integral part of such offense which may subject the offender to indictment and punishment.” 92 N.J. at 581, 458 A.2d 502 (emphasis added) (quoting State v. Williams, 30 N.J. 105, 114, 152 A.2d 9 (1959)). In that case, in part under the auspices of our State Constitution’s double-jeopardy guarantee, we adopted the same-evidence test—a variant of the same-conduct test—as a supplement to the same-elements test. See id. at 578, 582-83, 458 A.2d 502.
In adopting the same-evidence test, we relied primarily on Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), which, like Ashe, cast doubt on the singularity of the *107 Blockburger same-elements test. See Dively, supra, 92 N.J. at 579-82, 458 A.2d 502; see also Brown, supra, 432 U.S. at 166 n.6, 97 S.Ct. at 2226 n.6, 53 L.Ed.2d at 195 n.6 (“The Blockburger test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense.”). Vitale suggested that “the Double Jeopardy Clause bars any subsequent prosecution in which the government ... will prove conduct that constitutes an offense for which the defendant has already been prosecuted.” Grady v. Corbin, 495 U.S. 508, 521, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548, 564 (1990) (examining Vitale), overruled by United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).
In De Luca, supra, we applied the same-evidence test in a case involving a driver acquitted of recklessly killing a person with a vehicle—death by auto. 108 N.J. at 108-11, 527 A.2d 1355. We held that the State could not prosecute the driver for driving while intoxicated (DWI) if the driver’s reckless conduct in the first prosecution was predicated solely on his presumed intoxication. Id. at 108-09, 527 A.2d 1355. In other words, if the State’s sole evidence of recklessness in the death-by-auto case was intoxication, double jeopardy barred the State from prosecuting the driver for DWI. Ibid. We came to that conclusion even though, under Blockburger, death by auto and DWI do not share the same elements. Ibid.
In Dively, supra, we reached a result similar to De Luca in the reverse setting. See 92 N.J. at 582-83, 458 A.2d 502. There, we held that a driver who pled guilty to DWI could not be prosecuted for death by auto if the sole basis for his reckless conduct was his intoxication. Id. at 576-77, 582-83, 458 A.2d 502. Additionally, in Yoskowitz, supra, we reaffirmed that the same-evidence test was an integral part of our double-jeopardy jurisprudence. 116 N.J. at 691-92, 563 A.2d 1.
After De Luca, Dively, and Yoskowitz, we adopted Rule 3:15-3, which provides that “the court shall join any pending non-indictable complaint for trial with a criminal offense based on the same conduct or arising from the same episode.” R. 3:15—3(a)(1) (empha *108 sis added). This language parallels the mandatory joinder rule for indictable offenses and presumably provides similar protection from the sort of successive prosecutions condemned in Gregory and Williams.
The enforcement section of Rule 3:15-3 provides that a subsequent prosecution will be barred “as required by statute or by the Federal or State Constitutions.” R. 3:15—3(c). The drafters of that Rule knew that, under Dively and De Luca, our State Constitution barred successive prosecutions of indictable and lesser offenses arising under the same conduct that were not joined by the prosecution. Report of the Supreme Court Committee on Criminal Practice 44, 46-47, 52-57 (1988). Therefore, as of 1992, when Rule 3:15-3 became effective, the same-conduct test was the operative double-jeopardy framework for our State with respect to both indictable and non-indictable offenses. See R. 3:15-3 (effective 1992).
Since 1975, the operative double-jeopardy framework in this State has been the “same conduct” test. See Gregory, supra, 66 N.J. at 519-20, 333 A.2d 257. Thus, by the time Justice Brennan’s same-conduct test became the majority view of the United States Supreme Court in Grady, supra, 495 U.S. at 510, 110 S.Ct. at 2087, 109 L.Ed.2d at 557, our law had already provided that level of protection for fifteen years.
Therefore, Justice Scalia’s 1993 opinion in Dixon, supra, abandoning the same-conduct test and returning to the Blockburger same-elements test, was completely at odds with our jurisprudence. See 509 U.S. at 704, 113 S.Ct. at 2860, 125 L.Ed.2d at 573 (overruling Grady.) Notably, the Dixon Court was so deeply divided that it produced five separate opinions. The Justices disagreed not only about which test would best advance double-jeopardy principles, but also about how a factfinder would determine whether the same-elements test was satisfied. See generally Dixon, supra, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556.[4] We *109 do not have to follow the path taken by our federal counterpart, particularly when doing so is in conflict with our own well-established jurisprudence.
III.
For forty years, we have been broadening the enforcement of our mandatory joinder rules to safeguard defendants from successive prosecution of offenses arising from the same conduct. Dively, De Luca, and Yoskowitz are well-reasoned precedents of this Court. The majority has failed to give some “special justification” for sweeping them away, as required by the doctrine of stare decisis. State v. Brown, 190 N.J. 144, 157, 919 A.2d 107 (2007) (quoting Dickerson v. United States, 530 U.S. 428, 443, 120 S.Ct. 2326, 2336, 147 L.Ed.2d 405, 419 (2000)). The majority provides no compelling, much less persuasive, reason—other than the illusory promise of efficiency—for withdrawing protection previously guaranteed under our State Constitution and for reversing Dively and De Luca and abrogating much of Yoskowitz. Indeed, the majority is resigned to suggesting possible remedies for the constitutional gap it has opened.
What is the fallout from the majority’s ruling? There is now no bar to prosecuting defendants for differently framed non-indictable offenses based on the exact same conduct. The majority suggests that the Blockburger test is superior because it provides the benefit of ease of application. See ante at 96, 160 A.3d at 31. The Bill of Rights, however, was not intended to make prosecutions more efficient; it was intended to provide greater safeguards to the liberty of our people.
*110 Without changing our Court Rules to allow for the enforcement of Rule 3:15-3(a)(1), or leaving Dively and De Luca intact, a defendant convicted or acquitted of possession with intent to distribute drugs on a particular street corner can be prosecuted again for loitering with intent to distribute drugs on the same street corner. That is so because, although defendant’s conduct is the same, the elements of the two offenses are different. Had defendant pled guilty to the disorderly persons possession-of-marijuana charge—before the municipal court judge amended it to drug loitering—no one disputes that the State could not proceed with a prosecution for possession with intent to distribute. The double-jeopardy outcome changes only because the possession charge was amended to a similar offense with a similar penalty— drug loitering, which has different elements than the greater offense. Even if the amendment in this case was for benign reasons, the potential for manipulation in the future should be self-evident.
Under this new regime, double jeopardy will not bar the State from subjecting a public employee, who is acquitted of official misconduct, N.J.S.A. 2C:30-2(a), based on an allegation of stealing, from a second prosecution for disorderly theft, N.J.S.A. 2C :20—2(b)(4), -3(a), based on the same conduct and evidence. That follows because the elements of official misconduct and disorderly theft are different. Additionally, in robbery cases based on alleged force used by a defendant, N.J.S.A 2C:15—1(a)(1), an acquittal on the robbery will not bar a second prosecution for simple assault, N.J.S.A 2C:12—1(a), in municipal court. The prosecutions in the reverse order would also be permissible—without offending the majority’s notions of fundamental fairness.
Moreover, the State can consecutively prosecute an individual in municipal court for possession of drugs, N.J.S.A. 2C:35—10(a)(4), possession of drug paraphernalia, N.J.S.A. 2C:36-2, and loitering to obtain drugs, N.J.S.A 2C:33—2.1(b)(1), all arising from the same conduct, because the elements of the three non-indictable offenses are distinct. Those are but a few examples of the types of *111 successive prosecutions for offenses arising from the same conduct that will be permissible as a result of the majority’s decision.
The majority is not compelled to take this backwards step in our jurisprudence. Other jurisdictions have recognized the flaws of relying solely on the same-elements test in the post-Dixon era. See, e.g., Richardson v. State, 717 N.E.2d 32, 49-60 (Ind. 1999) (“[T]he statutory elements test and the actual evidence test, are components of the double jeopardy ‘same offense’ analysis under the Indiana Constitution.”); State v. Cotton, 778 So.2d 569, 573 (La. 2001) (“In evaluating claims of double jeopardy under [Louisiana law and the Louisiana Constitution], Louisiana courts have used the ‘same evidence’ test, which ... is ‘somewhat broader in concept than Blockburger.' ” (citation omitted)); State v. Gazda, 318 Mont. 516, 82 P.3d 20, 22 (2003) (“[Montana law] provides criminal defendants with greater protection against double jeopardy than the traditional double jeopardy ‘elements’ test set forth ... in Blockburger.” (citation omitted)).
That other state courts follow Dixon does not make the singular same-elements test superior to the same-conduct test for double-jeopardy purposes. If the majority’s approach today were the better one, this Court would never have decided Gregory, Williams, Dimly, and De Luca as it did. “In protecting the rights of citizens of this State, we have never slavishly followed the popular trends in other jurisdictions, particularly when the majority approach is incompatible with the unique interests, values, customs, and concerns of our people.” Lewis v. Harris, 188 N.J. 415, 456, 908 A.2d 196 (2006). Indeed, we have recognized that “[t]he New Jersey Constitution not only stands apart from other state constitutions, but also ‘may be a source of individual liberties more expansive than those conferred by the Federal Constitution.’ ” Ibid. (quoting State v. Novembrino, 105 N.J. 95, 144-45, 519 A.2d 820 (1987)). Aligning this Court’s interpretation of our State Constitution’s double-jeopardy guarantee with the United States Supreme Court’s interpretation of its federal cognate provision makes no sense given this Court’s decades-long commitment *112 to protecting the accused from the successive prosecution of offenses arising from the same conduct. We should remain true and consistent to the governing principles of our own jurisprudence. We should construe our Double Jeopardy Clause so that it fulfills notions of fundamental fairness. The majority’s concession that the amorphous fundamental-fairness doctrine may have to come to the rescue if unjust results arise from its new double-jeopardy rule is an admission of the flawed approach it is taking.
IV.
No one contests that the non-indictable disorderly persons offense of marijuana possession or drug loitering should have been joined with the indictable offense of possession with intent to distribute offense. See R. 3:15—3(a)(1). The appropriate response is not to abandon our double-jeopardy jurisprudence by overruling Dively and De Luca, but rather to enforce more rigorously our mandatory joinder rule, which requires the joinder of offenses arising from the same conduct.
The majority’s reversion to the same-elements test backtracks from a path that this Court had set out on forty years ago in Gregory. The majority’s new rule will allow the State, with all its resources and power, to pursue repeated prosecutions to convict an accused for the same offense, despite an earlier conviction or acquittal. That rule hollows out the protections previously provided by our jurisprudence and our State Constitution’s Double Jeopardy Clause.
For the reasons expressed in this opinion, I respectfully dissent.

 The Federal and State Double Jeopardy Clauses provide, no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," U.S. *104 Const. amend. V, and "[n]o person shall, after acquittal, be tried for the same offense,” N.J. Const. art. I, ¶ 11.

 Ashe v. Swenson involved the robbery of six players in a poker game. 397 U.S. 436, 437, 90 S.Ct. 1189, 1191, 25 L.EcUd 469, 472 (1970). The defendant was prosecuted for the robbery of one of the players and acquitted, apparently, based on his alibi defense. Id. at 438-39, 90 S.Ct. at 1191-92, 25 L.Ed.2d at 472-73. The United States Supreme Court barred a second prosecution for the robbery of *105 another poker player based on principles of collateral estoppel. Id. at 445-47, 90 S.Ct. at 1195-96, 25 L.Ed.2d at 476-77.

 In 1988, Rule 3:15— 1 (b) was amended to conform with the language of N.J.S.A. 2C: 1 —8(b). See Pressler & Verniero, Current N.J. Court Rules, comment on R. 3:15-1 (1988); 120 N.J.L.J. Index Pages 137-38 (1987).

 Only Justice Kennedy joined the entirety of Justice Scalia’s opinion. Chief Justice Rehnquist wrote an opinion, joined by Justices O’Connor and Thomas, *109 concurring in part and dissenting in part. Justice White wrote an opinion, joined by Justices Stevens and Souter (only Part I), concurring in the judgment in part and dissenting in part. Justice Blackmun wrote an opinion concurring in the judgment in part and dissenting in part. Justice Souter, joined by Justice Stevens, also wrote an opinion concurring in the judgment in part and dissenting in part.